Stephen M. Feldman, OSB No. 932674
SFeldman@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

R. Charles Henn Jr. (*pro hac vice*)
chenn@ktslaw.com
Charles H. Hooker III (*pro hac vice*)
chooker@ktslaw.com
Bethany R. Nelson (*pro hac vice*)
brnelson@ktslaw.com
Alexander Weathersby (*pro hac vice*)
aweathersby@ktslaw.com
Natalie Baber (*pro hac vice*)
nbaber@ktslaw.com
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500
Facsimile: 404.815.6555

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ADIDAS AMERICA, INC.**, an Oregon corporation; and **ADIDAS AG**, a foreign entity,<br><br>Plaintiffs,<br><br>v.<br><br>**AVIATOR NATION, INC.**, a California corporation; and **PAIGE MYCOSKIE**, a resident of Texas,<br><br>Defendants. | Case No. 3:24-cv-740 AN<br><br>**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**REDACTED** |

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rules 7-1(a)(1)(A) and (2), Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") certify that their counsel have conferred in good faith with Defendants Aviator Nation, Inc. ("Aviator Nation") and Paige Mycoskie ("Mycoskie," collectively with Aviator Nation, "Defendants") in an effort to resolve the issues raised by this Motion, but that the parties have been unable to do so. In conferring about this motion, the parties discussed each claim, defense, and issue that is the subject of the motion.

## LOCAL RULE 7-2 WORD COUNT CERTIFICATION

adidas's supporting memorandum complies with the applicable word-count limitation under Local Rules 7-2(b), 26-3(b), 54-1(c), or 54-3(e) because it contains 10,339 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of authorities, signature block, exhibits, and any certificates of counsel.

## MOTION

Pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 56-1, adidas respectfully moves this Court to enter summary judgment against Defendants on:

1. Aviator Nation's breach of the parties' 2022 settlement agreement ("2022 Agreement") based on Aviator Nation's marketing and sales of certain items of apparel past the deadline in the 2022 Agreement by which Aviator Nation agreed to stop marketing and selling these items;

2. Aviator Nation's breach of the 2022 Agreement based on Aviator Nation's publication of terms contained in the 2022 Agreement in violation of the confidentiality provision in the 2022 Agreement;

3. Aviator Nation's breach of the 2022 Agreement based on Aviator Nation's contentions in this litigation that adidas's trademark rights its Three-Stripe Mark are not valid in violation of Aviator Nation's agreement not to contest adidas's rights in the Three-Stripe Mark, including by claiming the Three-Stripe Mark is functional or aesthetically functional; and



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

4. All of Aviator Nation's remaining affirmative defenses.

In support of this Motion, adidas is filing the Declaration of Natalie Baber ("NB Decl.") and its accompanying exhibits, as well as the Declaration of Louie Crumbley ("LC Decl.") and its accompanying exhibits, and the following memorandum.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. FACTUAL BACKGROUND ........................................................................................ 2

A. adidas's Famous Three-Stripe Mark ........................................................................ 2

B. Defendants' Unlawful Conduct ................................................................................ 3

1. The 2019 Lawsuit And 2022 Agreement .................................................................. 4

2. Aviator Nation's Breaches Of The 2022 Agreement ................................................. 6

3. Paige Mycoskie's Public Disclosure Of Confidential Settlement Terms ... 7

C. adidas Took Action Immediately After Discovering Defendants' Misconduct ..... 8

III. ARGUMENT ................................................................................................................ 9

A. adidas Is Entitled To Partial Summary Judgment For Breach Of Contract ............ 9

1. The Undisputed Facts Demonstrate Numerous Breaches Of The 2022 Agreement ........................................................................................ 10

a. Aviator Nation Breached The 2022 Agreement By Selling Prohibited Apparel After The Deadline ........................................................ 10

b. Aviator Nation Breached The 2022 Agreement By Advertising Prohibited Designs Past The Deadline .......................................... 12

c. Defendants Breached the 2022 Agreement's Confidentiality Provision And adidas's Rights Provision ...................................................... 13

2. Aviator Nation's Breaches Damaged adidas ............................................ 14

B. Defendants' Affirmative Defenses Fail As A Matter Of Law ............................. 15

1. Statute Of Limitations, Laches, Estoppel, And Acquiescence Fail .......... 16

a. Laches Fails As A Matter of Law ................................................ 17

i. Laches Cannot Apply Because adidas Did Not Delay ...... 17

ii. The Equitable Factors Weigh Against Laches .................. 19

iii. Defendants Cannot Demonstrate Material Prejudice ........ 21

b. The Statute-Of-Limitations Defense Fails As A Matter Of Law .. 21



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

c. Acquiescence And Estoppel Fail As A Matter of Law ................. 22

2. Defendants Cannot Establish Unclean Hands ........................................... 23

3. The "Ownership of Trademark Registrations" Defense Is Unavailing .... 24

4. Classic Fair Use; Utilitarian and/or Aesthetic Functionality .................... 25

a. The Classic Fair Use Defense Fails As A Matter of Law ............. 25

b. The Functionality Defenses Fail Are Barred ................................ 26

5. No Evidence Shows adidas Failed To Mitigate Damages ........................ 26

6. No Evidence Shows adidas Failed To Perform Its Obligations ................ 27

7. Defendants' Preemption Defense Fails As A Matter Of Law .................. 28

8. The Contract-Related Affirmative Defenses Fail As A Matter Of Law ... 29

V. CONCLUSION ......................................................................................................... 30



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*adidas Am., Inc. v. Aviator Nation, Inc.*,
No. 3:19-cv-02049-HZ (D. Or. filed Dec. 17, 2019) ....................4

*adidas Am., Inc. v. Kmart Corp.*,
No. CV-05-120-ST, 2006 WL 2044857 (D. Or. June 15, 2006) ....................3

*adidas Am., Inc. v. Payless*,
546 F. Supp. 2d 1029 (D. Or. 2008) ....................9, 20

*adidas Am., Inc. v. Payless Shoesource, Inc.*,
529 F. Supp. 2d 1215 (D. Or. 2007) ....................18, 23

*adidas Am., Inc. v. Payless Shoesource, Inc.*,
540 F. Supp. 2d 1176 (D. Or. 2008) ....................17, 21, 22

*adidas Am., Inc. v. Payless Shoesource, Inc.*,
No. CV 01-1655-KI, 2008 WL 4279812 (D. Or. Sept. 12, 2008) ....................3, 17

*adidas Am., Inc. v. Skechers*,
890 F.3d 747 (9th Cir. 2018) ....................3, 20, 26

*adidas Am., Inc. v. TRB Acquisitions LLC*,
No. 3:15-CV-2113-SI, 2017 WL 337983 (D. Or. Jan. 23, 2017) ....................24

*Aero Sales, Inc. v. City of Salem*,
200 Or. App. 194, 114 P.3d 510 (2005) ....................30

*Cairns v. Franklin Mint Co.*,
292 F.3d 1139 (9th Cir. 2002) ....................25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................9

*Clamp Mfg. Co. v. Enco Mfg. Co.*,
870 F.2d 512 (9th Cir. 1989) ....................19, 20

*Coach, Inc. v. Kmart Corps.*,
756 F. Supp. 2d 421 (S.D.N.Y. 2010) ....................26

*Coastal Power Int'l, Ltd. v. Transcon. Cap. Corp.*,
10 F. Supp. 2d 345 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 163 (2d Cir. 1999) ....................27



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*Comer v. Micor, Inc.*,
436 F.3d 1098 (9th Cir. 2006) ....................29

*Craigslist Inc. v. 3Taps Inc.*,
942 F. Supp. 2d 962 (N.D. Cal. 2013) ....................28

*Derek & Constance Lee Corp. v. Kim Seng Co.*,
391 F. App'x 627 (9th Cir. 2010) ....................21

*Farmer v. Thar Process, Inc.*,
705 F. Supp. 3d 1218 (D. Or. 2023) ....................9

*Fathers & Daughters Nev., LLC v. Moaliitele*,
No. 3:16-cv-926-SI, 2016 WL 7638187 (D. Or. Dec. 19, 2016) ....................15

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
826 F.2d 837 (9th Cir. 1987) ....................23

*Golden Door, Inc. v. Odisho*,
646 F.2d 347 (9th Cir. 1980) ....................28

*Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*,
481 F. Supp. 3d 941 (D. Ariz. 2020) ....................28

*High Volatage Beverages, LLC v. Coca-Cola Co.*,
No. 3:08CV367, 2011 WL 831523 (W.D.N.C. Mar. 3, 2011) ....................18

*Hoffman-La Roche, Inc. v. Promega Corp.*,
319 F. Supp. 2d 1011 (N.D. Cal. 2004) ....................23

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
810 F. Supp. 2d 1013 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013) ....................18

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
176 F. Supp. 3d 137 (E.D.N.Y. 2016) ....................27

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*,
559 F.3d 985 (9th Cir. 2009) ....................21

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*,
287 F.3d 866 (9th Cir. 2002) ....................23, 24

*Johannsen v. Brown*,
797 F. Supp. 835 (D. Or. 1992) ....................22



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*Johnson-Power Constr., Inc. v. Mycoskie*,
No. D-1-GN-22-003511, 2025 WL 2484698 (Tex. Dist.—Travis Cnty. July 22, 2025) ....1

*Joseph v. W. Linn Paper Co.*,
No. 3:18-cv-1069, 2020 WL 2462439 (D. Or. Apr. 24, 2020) ....27

*JUUL Labs, Inc. v. Chou*,
676 F. Supp. 3d 827 (C.D. Cal. 2023) ....27

*La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*,
762 F.3d 867 (9th Cir. 2014) ....19, 20, 21

*Louis Vuitton Malletier, S.A.S. v. Keep it Gypsy, Inc.*,
No. 3:23-CV-2569-L, 2024 WL 3927819 (N.D. Tex. Aug. 8, 2024), *report and recommendation adopted sub nom. Malletier v. Keep It Gypsy, Inc.*, No. 3:23-CV-2569-L, 2024 WL 3933673 (N.D. Tex. Aug. 23, 2024) ....18

*LPD N.Y., LLC v. adidas Am., Inc.*, No. 15-CV-6360 (MKB), 2022 WL 4450999, at *25 (E.D.N.Y. Sept. 24, 2022) ....27

*Mallory v. Iron Shield, LLC*,
No. 6:24-cv-01116-AA, 2024 WL 4607748 (D. Or. Oct. 29, 2024) ....15

*McCoy Assocs., Inc. v. Nulux, Inc.*,
218 F. Supp. 2d 286 (E.D.N.Y. 2002) ....14

*McCoy v. Mitsuboshi Cutlery, Inc.*,
67 F.3d 917 (Fed. Cir. 1995) ....28

*Meunier v. Nw. Mut. Life Ins. Co.*,
51 F. Supp. 3d 1023 (D. Or. 2014) ....22

*Mohr v. Lear*,
395 P.2d 117 (Or. 1964) ....28

*Nettleton v. Exact Scis. Corp.*,
645 F. Supp. 3d 1049 (D. Or. 2022), *aff'd*, No. 23-35399, 2024 WL 3579334 (9th Cir. July 30, 2024) ....29

*Off. Airline Guides, Inc. v. Churchfield Publ'ns, Inc.*,
756 F. Supp. 1393 (D. Or. 1990), *aff'd*, 6 F.3d 1385, 28 U.S.P.Q.2d 1641 (9th Cir. 1993) ....19

*Olmstead v. ReconTrust Co.*,
852 F. Supp. 2d 1318 (D. Or. 2012) ....28



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
572 U.S. 663 (2014)....................22

*Philip Morris, Inc. v. Allen Distribs., Inc.*,
48 F. Supp. 2d 844 (S.D. Ind. 1999)....................19

*Piper Aircraft Corp. v. Wag-Aero, Inc.*,
741 F.2d 925 (7th Cir. 1984)....................19

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
402 F. Supp. 3d 615 (N.D. Cal. 2019), *aff'd*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022)....................14

*Polar Bear Productions, Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004)....................28

*Regency Midwest Ventures Ltd. P'ship v. Best W. Int'l, Inc.*,
No. CIV-16-02491-PHX-MHB, 2017 WL 992357 (D. Ariz. Mar. 15, 2017)....................18

*Reno Air Racing Ass'n, Inc. v. McCord*,
452 F.3d 1126 (9th Cir. 2006)....................17, 21

*Ross Dress for Less, Inc. v. Makarios-Or., LLC*,
No. 3:14-cv-1971-SI, 2018 WL 2452957 (D. Or. May 31, 2018)....................15

*Seattle Pac. Indus., Inc. v. S3 Holding LLC*,
831 F. App'x 814 (9th Cir. 2020)....................23

*Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*,
621 F.3d 981 (9th Cir. 2010)....................22

*Slover v. Or. Bd. of Clinical Soc. Workers*,
927 P.2d 1098 (Or. Ct. App. 1996)....................9

*Smith v. Abel*,
316 P.2d 793 (Or. 1957)....................15

*Smith v. Pallay*,
279 P. 279 (Or. 1929)....................15

*Spence v. Allen*,
260 P.2d 949 (Or. 1953)....................15

*State for Use & Benefit of Cipriano v. Triad Mech., Inc.*,
144 Or. App. 106, 925 P.2d 918 (1996)....................30



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*SunEarth, Inc. v. Sun Earth Solar Power Co.*,
846 F. Supp. 2d 1063 (N.D. Cal. 2012) .......... 20

*Sunrich Food Grp., Inc. v. Pac. Foods of Or., Inc.*,
233 F. Supp. 2d 1273 (D. Or. 2002) .......... 26

*Symantec Corp. v. CD Micro, Inc.*,
286 F. Supp. 2d 1265 (D. Or. 2003) .......... 17

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*,
610 F.3d 1171 (9th Cir. 2010) .......... 18, 19

*United Steelworkers of Am. v. Phelps Dodge Corp.*,
865 F.2d 1539 (9th Cir. 1989) .......... 9

**Statutes**

15 U.S.C. § 1125(c)(6) .......... 24

Or. Rev. Stat. § 12.110 .......... 22

**Other Authorities**

Fed. R. Civ. P. 56(c) .......... 9

3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
(5th ed.) .......... 24, 26, 28



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

## MEMORANDUM OF LAW

## I. INTRODUCTION

For well over half a century, adidas has used three stripes on its apparel, footwear, and other products to signify the source of its goods and the goodwill consumers associate with adidas (the "Three-Stripe Mark"). Courts repeatedly have held that the Three-Stripe Mark is famous; and it is especially well known when it runs along the outseam of a shirt sleeve or pant leg.

For more than a decade, adidas repeatedly has objected to Aviator Nation's use of parallel stripes on Aviator Nation's competing hoodies, sweatpants, and other athletic apparel, which Aviator Nation has placed along the outseams of sleeves and pants. In settlement agreements signed in 2012, 2013, and 2022, Aviator Nation (a) acknowledged adidas's rights in the Three-Stripe Mark, (b) agreed not to challenge the validity of the mark, (c) agreed to stop selling apparel adidas had identified as infringing, (d) committed to stop making, marketing, or selling apparel featuring a stripe design confusingly similar to the Three-Stripe Mark, and (e) agreed to keep the contents of the settlement agreements strictly confidential.

In the May 4, 2022 Agreement (the "2022 Agreement") in particular, Aviator Nation agreed to stop selling more than 100 items of striped apparel adidas had accused in the 2019 lawsuit it filed against Aviator Nation (the "2019 Disputed Apparel"), subject to a strict one-year deadline (until May 4, 2023, the "Deadline") for Aviator Nation to finish selling any remaining inventory of the 2019 Disputed Apparel. Notwithstanding Aviator Nation's clear commitments, in December 2023, adidas learned that Aviator Nation again was ignoring adidas's rights and flaunting its obligations:[1] Aviator Nation continued to advertise and sell the 2019 Disputed Apparel past the Deadline; it continued to make and sell apparel featuring stripe designs confusingly similar to the Three-Stripe Mark or which otherwise did not comply with the 2022 Agreement's terms; and

[1] This is not the first time Defendant Paige Mycoskie has disregarded her legal obligations and breached a contract. *See Johnson-Power Constr., Inc. v. Mycoskie*, No. D-1-GN-22-003511, 2025 WL 2484698, at *2 (Tex. Dist.—Travis Cnty. July 22, 2025) (Travis County, Texas final judgment following a jury trial holding Mycoskie personally liable for $304,797.16 in quantum meruit and nearly $200,000 in attorneys' fees, in addition to other sanctions).



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

adidas subsequently learned Mycoskie appeared on a popular National Public Radio podcast where she publicly discussed (and misconstrued) the confidential terms of the parties' agreements.

To narrow the issues for trial, adidas moves for partial summary judgment on: (1) clear, indisputable breaches of the 2022 Agreement's Deadline, confidentiality provision, and agreement not to challenge adidas's rights; and (2) all of Defendants' threadbare affirmative defenses, most of which are inadequately pleaded on their face, and none of which is supported by record evidence. The Court should grant adidas's Motion to allow the trial to focus on disputed issues such as whether certain currently disputed Aviator Nation stripe designs create a likelihood of confusion or dilution or fall within a safe harbor provision of the 2022 Agreement.

## II. FACTUAL BACKGROUND

### A. adidas's Famous Three-Stripe Mark

adidas is a leading manufacturer of athletic footwear, equipment, and apparel, including athleisure, casual clothing, and loungewear. *See* NB Decl. ¶ 30, Ex. 26 (examples of adidas apparel). Since at least as early as 1952, adidas has used the Three-Stripe Mark on athletic footwear sold in the United States. *Id.* ¶ 31, Ex. 27 at 7. The mark quickly came to signify the quality and reputation of adidas footwear, and by 1967, adidas expanded its use in the United States to apparel. *Id.* ¶ 14, Ex. 10 (Ex. 6 to Mycoskie 30(b)(6) Dep.) at 3. adidas's Three-Stripe Mark is a source identifier that adidas has cultivated by investing billions of dollars in advertising and promotions, including sponsoring and collaborating with athletes, sports teams, and celebrities across music and fashion. *Id.* ¶ 8, Ex. 4 ("Murphy Dep.") at 201:18–25, 203:12–206:6; *id.* ¶ 32, Ex. 28 (marketing compilation).

Countless unsolicited media articles show the public associates the Three-Stripe Mark with adidas, referring to it as "iconic" and "famous." *See id.* ¶ 33, Ex. 29 (media articles). Annual U.S. sales of products sold in association with the Three-Stripe Mark routinely total in the billions of dollars. *See id.* ¶ 28, Ex. 24 (Ex. 139 to Bobyleva Dep.).



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

adidas vigorously protects its Three-Stripe Mark. *Id.* ¶ 12, Ex. 8 ("Vanderhoff Dep.") at 209:17–210:8, 211:12–22, 213:7–22; *see also id.* ¶ 34, Ex. 30 (Three-Stripe Mark litigation list); *id.* ¶ 35. And adidas owns numerous incontestable federal trademark registrations for the Three-Stripe Mark.[2] *Id.* ¶¶ 14, 31, Exs. 10, 27. In short, the Three-Stripe Mark is undeniably strong and "is one of the most famous marks in the world." *adidas Am., Inc. v. Skechers*, 890 F.3d 747, 764 (9th Cir. 2018) (Clifton, J., concurring); *see also id.* at 757–59; *adidas Am., Inc. v. Kmart Corp.*, No. CV-05-120-ST, 2006 WL 2044857, at *12 (D. Or. June 15, 2006); *adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CV 01-1655-KI, 2008 WL 4279812, at *8 (D. Or. Sept. 12, 2008).

**B. Defendants' Unlawful Conduct**

Aviator Nation is a lifestyle apparel brand founded by Defendant Paige Mycoskie in 2006, which offers apparel such as hoodies and sweatpants. NB Decl. ¶ 36, Ex. 31. Mycoskie is the sole owner, President, and Creative Director. *Id.*; *see also id.* ¶ 5, Ex. 1 ("Mycoskie 30(b)(6) Dep.") at 9:12–25. [redacted].[3]

Over the years, adidas has objected when Aviator Nation has manufactured and sold hoodies, sweatpants, shorts, and other apparel featuring parallel-stripe designs confusingly similar to the Three-Stripe Mark. *See, e.g.*, *id.* ¶ 37, Ex. 32 (2011 Demand Letter); *id.* ¶ 38, Ex. 33 (2012 Correspondence); *id.* ¶ 39, Ex. 34 (2018 Demand Letter). [redacted] *See id.* ¶¶ 13, 15, Exs. 9, 11 (Exs. 5 and 7 to Mycoskie 30(b)(6) Dep.).

[2] Courts repeatedly have recognized that the Three-Stripe Mark is a singular mark. *See, e.g.*, *adidas Am., Inc. v. Skechers*, 890 F.3d 747, 752 (9th Cir. 2018) (explaining that the Three-Stripe Mark is a trademark for which adidas owns multiple registrations).

[3] Mycoskie 30(b)(6) Dep. at 26:9–13, 316:2–318:6; NB Decl. ¶ 10, Ex. 6 ("Gvildys Dep.") at 151:4–7; NB Decl. ¶ 11, Ex. 7 ("Gibson Dep.") at 86:1–6; NB Decl. ¶ 21, Ex. 17 (Ex. 41 to Mycoskie 30(b)(6) Dep.) at 2, 5.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

### 1. The 2019 Lawsuit And 2022 Agreement

Notwithstanding Aviator Nation's prior agreements, in 2018 adidas learned that Aviator Nation again was selling apparel featuring parallel-stripe designs confusingly similar—if not identical—to adidas's famous Three-Stripe Mark. *See id.* ¶ 39, Ex. 34 (2018 Demand Letter); *id.* ¶ 16, Ex. 12 (Ex. 8 to Mycoskie 30(b)(6) Dep.) ("2022 Agreement") at 1, 35–85. In 2019, adidas sued Aviator Nation for breach of contract, trademark infringement and dilution, unfair competition, and counterfeiting. *See adidas Am., Inc. v. Aviator Nation, Inc.*, No. 3:19-cv-02049-HZ (D. Or. filed Dec. 17, 2019). [redacted]. 2022 Agreement at 1.

In the 2022 Agreement, [redacted] *Id.* ¶ 3.1 & Ex. 3. [redacted] *Id.* ¶ 4. [redacted] *Id.* (emphasis added); *see* Mycoskie 30(b)(6) Dep. at 80:15–81:15. As detailed below in Section II(B)(2), Aviator Nation did not comply. Instead, it continued to market and sell the following three groups of 2019 Disputed Apparel ***after the Deadline***. (adidas refers collectively to 2019 Disputed Apparel marketed or sold after the Deadline as the "Prohibited Designs.")[4]

[4] [redacted]. *See* Mycoskie 30(b)(6) Dep. at 218:11–219:4; 220:25–221:25; Gvildys Dep. at 129:12–18. This brief refers to them as the "Navy Prohibited Designs," "Charcoal Prohibited Designs," and "Charcoal Gray Prohibited Designs," respectively.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

| | | | |
|---|---|---|---|
| **The “Navy Prohibited Designs”** |  WSPRS5-NVY |  MSPPRS5-NVY |  HDRS5-NVY |
| **The “Charcoal Prohibited Designs”** |  WSPRS5-CHAR | |  HDRS5-CHAR |
| **The “Charcoal Gray Prohibited Designs”** |  WSPRS5-CHARG |  MSPPRS5-CHARG |  HDRS5-CHARG |



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*See* 2022 Agreement, Ex. 3, Nos. 17, 20, 27, 73, 79, 84, 86; *see also* NB Decl. ¶ 44.

[redacted] 2022 Agreement ¶ 3.3 (the "adidas's Rights Provision"). Finally, [redacted] *Id.* ¶ 12 (the "Confidentiality Provision").

**2. Aviator Nation's Breaches Of The 2022 Agreement**

As numerous Aviator Nation 30(b)(6) witnesses admitted in this case, after Aviator Nation entered into the 2022 Agreement, [redacted][5] For example, Kelly Gvildys was Aviator Nation's then-Chief of Production [redacted]. She testified [redacted].[6] Similarly, Curtis Ulrich, Aviator Nation's Director of eCommerce, [redacted].[7]

Given Aviator Nation's [redacted], its unsurprising that Aviator Nation continued advertising and selling the Prohibited Designs after the Deadline.[8] Specifically, the undisputed evidence demonstrates the following breaches:

---

[5] *See* NB Decl. ¶ 6, Ex. 2 ("Ulrich Dep.") at 43:24–45:18; Gvildys Dep. at 36:17–25; NB Decl. ¶ 7, Ex. 3 ("Madrid Dep.") at 32:1–12, 39:5–8, 40:3–42:24; NB Decl. ¶ 9, Ex. 5 ("Thompson Dep.") at 173:24–174:5.

[6] *See* NB Decl. ¶ 19, Ex. 15 (Ex. 23 to Mycoskie 30(b)(6) Dep.) at 19; Gvildys Dep. at 35:1–7, 95:3–24, 144:20–145:10, 149:22–24; *see also* Mycoskie 30(b)(6) Dep. at 91:19–22, 94:20–23, 101:15–17, 102:23–25, 110:14–16, 112:2–4, 115:8–10.

[7] Ulrich Dep. at 43:24–44:16, 61:25–62:19, 63:16–23, 64:12–18.

[8] Making matters worse—and in a deliberate effort to obscure whether or when it redesigned or stopped selling the 2019 Disputed Apparel [redacted]. Mycoskie 30(b)(6) Dep. at 132:18–134:5, 248:23–250:13; Gvildys Dep.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

- Aviator Nation made no effort to redesign the Charcoal Prohibited Designs or Charcoal Gray Prohibited Designs, and only redesigned the Navy Prohibited Designs ***after*** the Deadline. *See, e.g.*, NB Decl. ¶ 17, Ex. 13 (Ex. 21 to Mycoskie 30(b)(6) Dep.) at 2; *id.* ¶ 18, Ex. 14 (Ex. 22 to Mycoskie 30(b)(6) Dep.) at 2; *id.* ¶ 40, Ex. 35 at 2.
- adidas purchased the Charcoal Prohibited Designs and Charcoal Gray Prohibited Designs on June 17, 2025, well after the Deadline. *See* LC Decl. ¶ 4, Ex. 3; *id.* ¶ 8 (chart comparing photographs of Charcoal Prohibited Designs and Charcoal Gray Prohibited Designs purchased before and after the Deadline).
- Gvildys testified that [redacted].[9] [redacted]. NB Decl. ¶ 40, Ex. 35 at 2.
- Aviator Nation continued to sell the Navy Prohibited Designs after the Deadline while awaiting Mycoskie's approval of a redesign.[10]
- Aviator Nation continued to display images of all of the Prohibited Designs on its website and in its marketing materials well past the Deadline. *See id.* ¶¶ 22–24, Exs. 18–20 (Exs. 87, 89, and 90 to Ulrich Dep.); Ulrich Dep. at 63:16–23, 64:12–18, 149:6–19.

### 3. Paige Mycoskie's Public Disclosure Of Confidential Settlement Terms

In addition to these breaches, Mycoskie publicly disclosed the confidential terms of the 2022 Agreement in January 2024 when she appeared on an episode of Guy Raz's podcast "How I

at 93:11–16. In other words, one cannot look at a SKU number and determine whether an item is a 2019 Disputed Apparel item or a redesigned apparel item.

[9] *See* Gvildys Dep. at 149:2–4, 17–21, 153:11–12.

[10] *See* NB Decl. ¶ 26, Ex. 22 (Ex. 96 to Ulrich Dep.); *id.* ¶ 25, Ex. 21 (Ex. 94 to Ulrich Dep.); Ulrich Dep. at 123:12–125:2, 126:8–10, 134:3–135:6; Thompson Dep. at 177:11–19, 178:22–179:6, 180:9–10; NB Decl. ¶ 19, Ex. 15 (Ex. 23 to Mycoskie 30(b)(6) Dep.) at 19; Gvildys Dep. at 91:24–92:24 ([redacted]); *see also* Madrid Dep. at 42:4–24; Ulrich Dep. at 63:16–23, 64:12–18; Thompson Dep. at 173:24–174:5 ([redacted]).



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Built This." NB Decl. ¶ 20, Ex. 16 (Ex. 35 to Mycoskie 30(b)(6) Dep.) at 1. Specifically, she publicly discussed (and mischaracterized) key terms of the 2022 Agreement—in violation of the Confidentiality Provision—when she stated on the air:

[redacted]

*Id.* at 45.

### C. adidas Took Action Immediately After Discovering Defendants' Misconduct

adidas first discovered Defendants' post-Deadline misconduct [redacted]. Vanderhoff Dep. 154:17–[redacted]. *See* NB Decl. ¶ 27, Ex. 23 (Ex. 117 to Vanderhoff Dep.). The parties attempted to resolve this dispute and engaged in a mediation on May 1, 2024. *Id.* ¶ 4. When those efforts failed, adidas filed this action. *See* Dkt. 1. In its Answer to adidas's Second Amended Complaint, Aviator Nation asserted "Classic Fair Use; Utilitarian and/or Aesthetic Functionality" as an affirmative defense (Dkt. 28 at 18), thereby further breaching the 2022 Agreement [redacted]" 2022 Agreement ¶ 3.3 ("adidas's Rights Provision").

After filing this lawsuit, adidas continued investigating Defendants' conduct. Following the close of fact discovery, adidas notified Defendants of the specific current disputed designs ("CDDs") it intends to pursue during the summary-judgment and trial phases of this case. *See* NB Decl. ¶ 29, Ex. 25 (Post-Discovery CDD Chart). In this Motion, adidas seeks summary judgment on the breach-of-contract claims described above and Defendants' affirmative defenses which fail



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

as a matter of law.

## III. ARGUMENT

Summary judgment is proper when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A non-movant must go beyond the pleadings and designate specific facts and evidence showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A "*scintilla* of evidence," or evidence that is "'merely colorable' or not 'significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (citations omitted). "[S]ummary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *adidas Am., Inc. v. Payless*, 546 F. Supp. 2d 1029, 1044 (D. Or. 2008) (citing *Celotex*, 477 U.S. at 323).

Here, the Court should enter summary judgment holding (a) Defendants breached the Deadline, Confidentiality, and adidas's Rights Provision of the 2022 Agreement and (b) all of Defendants' affirmative defenses fail as a matter of law.

### A. adidas Is Entitled To Partial Summary Judgment For Breach Of Contract

To succeed on its breach of contract claim under Oregon law, adidas must show (1) "the existence of a contract," (2) "its relevant terms," (3) "[adidas's] full performance and lack [of] breach," and (4) "[Defendants'] breach resulting in damage to [adidas]." *Farmer v. Thar Process, Inc.*, 705 F. Supp. 3d 1218, 1226 (D. Or. 2023) (quoting *Slover v. Or. Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. Ct. App. 1996)).

The first three elements cannot be disputed. Defendants concede "Aviator Nation and adidas entered into a valid and enforceable Settlement Agreement in 2022 … that resolved the 2019 Lawsuit." Dkt. 28 at 37, ¶ 39; Mycoskie 30(b)(6) Dep. at 315:14–18. Similarly, Defendants do not claim adidas failed to perform its contractual obligations prior to their own breach. And



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

relevant terms in the 2022 Agreement plainly govern Aviator Nation's conduct.

Turning to the fourth element, the undisputed evidence shows Defendants violated the 2022 Agreement's terms, and these breaches damaged adidas.

### 1. The Undisputed Facts Demonstrate Numerous Breaches Of The 2022 Agreement

The undisputed evidence shows Defendants plainly violated 2022 Agreement by: (a) selling 2019 Disputed Apparel ***after*** the Deadline at which point it became Prohibited Designs; (b) marketing Prohibited Designs past the Deadline; and (c) publicly disclosing confidential settlement terms and challenging the validity of adidas's Three-Stripe Mark.

#### a. Aviator Nation Breached The 2022 Agreement By Selling Prohibited Apparel After The Deadline

Aviator Nation agreed that [redacted] 2022 Agreement ¶ 4; *see* Mycoskie 30(b)(6) Dep. at 80:15–81:15.

Despite expressly agreeing to cease all sales of the Prohibited Designs by the May 4, 2023 Deadline, Defendants did not. Text messages between Mycoskie and Gvildys show [redacted]—after the expiration of the Deadline. *See* NB Decl. ¶ 19, Ex. 15 (Ex. 23 to Mycoskie 30(b)(6) Dep.) at 18 ([redacted]); *id.* ¶ 40, Ex. 35 at 2 ([redacted]).[11]

Indeed, Gvildys admitted the [redacted]

[11] In the May 10, 2023 text thread, [redacted]. *See* Gvildys Dep. 75:9–24.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

[redacted].[12] *See* Gvildys Dep. at 149:2–4 (Q: "[redacted]" A: "[redacted]."); 149:17–21 (A: "[redacted]." Q: "[redacted]?" A: "[redacted]."); 153:11–12 ("[redacted]."); *see also id.* at 151:4–7 (Q: "[redacted]" A: [redacted]").

Critically, Aviator Nation did not stop selling the Navy Prohibited Designs while awaiting Mycoskie's belated redesign approval. *See* NB Decl. ¶ 26, Ex. 22 (Ex. 96 to Ulrich Dep.) ([redacted]; *id.* ¶ 25, Ex. 21 (Ex. 94 to Ulrich Dep.) ([redacted]); *see also id.* ¶ 19, Ex. 15 (Ex. 23 to Mycoskie 30(b)(6) Dep.) at 19 ([redacted]); Gvildys Dep. at 91:14–92:24 (testifying that [redacted]); Madrid Dep. at 16:11–15, 42:4–24 (Aviator Nation's Director of Retail Operations stating that [redacted]); Ulrich Dep. at 63:16–23, 64:12–18 (Aviator Nation's Director of eCommerce stating that [redacted]); Thompson Dep. at 14:4–7, 173:24–174:5 (Aviator Nation's Director of Wholesale Sales testifying that [redacted]

[12] Gvildys was not even aware of when the Deadline was. On May 11, 2023—one week after the Deadline [redacted]" NB Decl. ¶ 19, Ex. 15 (Ex. 23 to Mycoskie 30(b)(6) Dep.) at 19; *see* Gvildys Dep. at 144:20–145:10, 149:22–24.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

[redacted]).

Turning to the Charcoal Gray Prohibited Designs, text messages between Mycoskie and Gvildys reveal [redacted] NB Decl. ¶ 17, Ex. 13 (Ex. 21 to Mycoskie 30(b)(6) Dep.) at 2 ([redacted]). When adidas ***purchased the Charcoal Gray Prohibited Designs*** from Aviator Nation on ***June 17, 2025***, the design was ***identical*** to the Charcoal Gray Prohibited Designs that adidas had purchased from Aviator Nation during the prior litigation in 2022. *See* LC Decl. ¶¶ 4, 8. Aviator Nation has thus continued to sell the Charcoal Gray Prohibited Designs ***long past the Deadline***. *See id.*

In further violation of the Deadline, Mycoskie further instructed Gvildys that [redacted] NB Decl. ¶ 18, Ex. 14 (Ex. 22 to Mycoskie 30(b)(6) Dep.) at 2 ([redacted]). Gvildys complied with that instruction, admitting [redacted]. *See* Gvildys Dep. at 168:4–23; *see also id.* at 155:24. As with the Charcoal Gray Prohibited Designs, purchased product specimens confirm that the Charcoal Prohibited Designs were not redesigned ***even as of June 17, 2025***.[13] *See* LC Decl. ¶¶ 4, 8.

Aviator Nation's continued sales of the Prohibited Designs after the Deadline constitute clear breaches of the 2022 Agreement.

**b. Aviator Nation Breached The 2022 Agreement By Advertising Prohibited Designs Past The Deadline**

In addition to prohibiting making or selling the 2019 Disputed Apparel in Exhibit 3, [redacted]

[13] June 17, 2025 is the most recent date on which adidas purchased the Charcoal Gray Prohibited Designs for purposes of comparing them to the original 2019 Disputed Apparel. But adidas has no reason to believe the Charcoal Gray and Charcoal Prohibited Designs have *ever* been redesigned.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

[redacted] 2022 Agreement ¶¶ 3.1, 4, Ex. 3. The undisputed facts show Aviator Nation breached that provision by continuing to advertise, market, and promote the Navy, Charcoal, and Charcoal Gray Prohibited Designs post Deadline.

Notwithstanding his role as director of eCommerce, Ulrich [redacted]. Ulrich Dep. at 43:24–44:16; 61:25–62:19. He therefore [redacted]. *See id.* at 61:25–62:19. As a result, [redacted]. *Id.* at 149:6–19; *see also id.* at 64:5–11 ([redacted]). Of course, because the Navy Prohibited, Charcoal Gray Prohibited, and Charcoal Prohibited Designs were not redesigned by the Deadline, no timely updates to the online images of those products occurred.

Consistent with that testimony, internet archive captures from before and after May 4, 2023 show Aviator Nation continued to advertise and market the Navy Prohibited and Charcoal Gray Prohibited Designs. *See* Ulrich Exs. 87, 89, 90 (internet archive captures showing the same marketing images for Navy Prohibited and Charcoal Gray Prohibited Designs before and after May 4, 2023). Moreover, it is axiomatic that Aviator Nation continued to market the Charcoal and Charcoal Gray Prohibited Designs, because the undisputed evidence shows Aviator Nation never redesigned them. *See, e.g.*, LC Decl. ¶ 8; NB Decl. ¶ 17, Ex. 13 (Ex. 21 to Mycoskie 30(b)(6) Dep.) at 2; NB Decl. ¶ 18, Ex. 14 (Ex. 22 to Mycoskie 30(b)(6) Dep.) at 2.

#### c. Defendants Breached the 2022 Agreement's Confidentiality Provision And adidas's Rights Provision

The Confidentiality Provision is clear: [redacted] 2022 Agreement ¶ 12. Undeterred, Mycoskie went on the air and publicly discussed



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

the Parties' prior disputes and the 2022 Agreement's terms.[14] Mycoskie 30(b)(6) Dep. at 276:2–277:9, 280:2–281:18; NB Decl. ¶ 20, Ex. 16 at 45. Aviator Nation thus breached the 2022 Agreement.

Aviator Nation further breached the 2022 Agreement by challenging the validity of the Three-Stripe Mark in violation of the adidas's Rights Provision where [redacted] 2022 Agreement ¶ 3.3. Aviator Nation's Answer asserts affirmative defenses claiming the Three-Stripe Mark is "utilitarian and/or aesthetically functional[]." Dkt. 28 at 18–19. Thus, Aviator Nation plainly breached Paragraphs 3.3 and 12 of the 2022 Agreement.

**2. Aviator Nation's Breaches Damaged adidas**

In the 2022 Agreement, Aviator Nation agreed that [redacted] 2022 Agreement ¶ 7. The monetary value of adidas's damages are quantified in adidas's damages expert's report and will be determined at trial, but the Court need not wade into quantifying money damages to enter summary judgment on liability for breach of contract. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 402 F. Supp. 3d 615, 658–659 (N.D. Cal. 2019), *aff'd*, No. 20-16068, 2022 WL 13613963 (9th Cir. Oct. 21, 2022) (granting summary judgment in favor of plaintiff's breach-of-contract claim when "undisputed, material facts establish[ed] that [defendants] breached the [agreements]" despite argument that damages were speculative because "nominal damages are still available and have been adequately supported on this record"); *McCoy Assocs., Inc. v. Nulux, Inc.*, 218 F. Supp. 2d 286, 294 (E.D.N.Y. 2002) ("Accordingly, summary judgment should be granted where, as here, the existence of a contract and its breach have been established, regardless of the certainty of

[14] The parties' prior settlement agreements from 2012 and 2013 contained the same confidentiality requirements. *See* 2022 Agreement, Exs. 1 and 2.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

damages.”).

Moreover, under Oregon law, nominal damages are presumed when a breach of contract is shown, even if no further damages are quantified. *Smith v. Pallay*, 279 P. 279, 281–82 (Or. 1929); *see also Spence v. Allen*, 260 P.2d 949, 951 (Or. 1953) (“It is a general principle of law that if an agreement is alleged together with the breach thereof, damages are presumed to flow from this breach, and, in the absence of anything else, nominal damages will be awarded.”); *Smith v. Abel*, 316 P.2d 793, 801 (Or. 1957) (same); *Ross Dress for Less, Inc. v. Makarios-Or., LLC*, No. 3:14-cv-1971-SI, 2018 WL 2452957, at *6 (D. Or. May 31, 2018) (same).

adidas is entitled to summary judgment on its breach claims concerning the Navy, Charcoal, and Charcoal Gray Prohibited Designs that Aviator Nation marketed and sold past the Deadline, as well as its breaches of Paragraphs 3.3 and 12 of the 2022 Agreement.

**B. Defendants’ Affirmative Defenses Fail As A Matter Of Law**

Defendants assert thirteen affirmative defenses.[15] Each of them fails because the undisputed facts show Defendants cannot establish them, they are foreclosed by binding precedent, or they are contractually barred—as discussed in detail in the subsections below. As a threshold matter, however, twelve of Defendants’ defenses fail as a matter of law because they do not provide plausible notice of their factual bases and are thus inadequately pleaded.

Affirmative defenses must “provide fair notice” and “describe [the defense] in general terms.” *See Fathers & Daughters Nev., LLC v. Moaliitele*, No. 3:16-cv-926-SI, 2016 WL 7638187, at *4–5 (D. Or. Dec. 19, 2016) (finding a threadbare affirmative defense insufficient); *see also Mallory v. Iron Shield, LLC*, No. 6:24-cv-01116-AA, 2024 WL 4607748, at *4 (D. Or. Oct. 29, 2024) (explaining that “fair notice” still requires a defendant to “state the nature and grounds” of the affirmative defense and striking threadbare defenses that did not plead the necessary elements

[15] Defendants asserted fifteen affirmative defenses (*see* Dkt. 28) but withdrew their first affirmative defense (failure to state a claim) and fifteenth affirmative defense (“offset/setoff”) when the parties conferred on this Motion. *See* NB Decl. ¶ 2.


**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

of the defense). Affirmative Defenses 4, 6, 7, 8, 9, 10, 11, 12, 13, and 14 fail to do so because they are boilerplate recitations of the names and elements of defenses devoid of factual allegations. For example, the Eleventh Affirmative Defense, "misrepresentation and/or concealment," states "adidas' breach of contract claim is barred in whole or in part by the doctrines of intentional or negligent misrepresentation and/or concealment." Dkt. 28 at 20. Defendants fail to identify a single misrepresentation or concealed fact and thus fail to provide fair notice of what the defense is supposed to encompass. Defenses 4, 6, 7–10, and 12–14 are similarly impermissibly threadbare.

Defenses 2, 5, 9, and 13 combine multiple affirmative defenses without delineating which allegations, if any, apply to which defense. For example, the Second Affirmative Defense, "statute of limitations/laches/estoppel/acquiescence," states only that "Aviator Nation has designed, manufactured, marketed and sold striped clothing since its inception in 2006. On information and belief, adidas has known about Defendants' sale of four- and five-stripe apparel designs since at least 2012." *Id.* at 17. But each of the defenses—laches, statute of limitations, estoppel, and acquiescence—is different with distinct elements, and Defendants fail to allege facts sufficient to provide notice of each defense.[16]

The Court should enter judgment against all of Defendants' improperly pleaded defenses. But even if the Court considers them, each further fails as a matter of law because they find no support in the record evidence, are foreclosed by law, or are contractually barred.

### 1. Statute Of Limitations, Laches, Estoppel, And Acquiescence Fail

Defendants' Second Affirmative Defense combines several distinct defenses "Statute of Limitations /Laches/ Estoppel/Acquiescence," all of which fail as a matter of law. All require a showing of undue delay. The record, however, shows no delay occurred; adidas promptly objected one month after discovering Defendants' misconduct. This undisputed fact alone eviscerates these

[16] For example, the ninth defense is titled "mistake" and contains both fatal flaws, stating only that "adidas' breach of contract claim is barred in whole or in part by the doctrines of unilateral, mutual and/or latent ambiguity mistake, misapprehension and/or surprise." Dkt. 28 at 19. This neither provides fair notice, nor alleges facts in support of each separate defense.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

defenses. Additionally, no evidence is capable of demonstrating any conceivable prejudice. And no evidence suggests adidas engaged in any misleading conduct or consented to Defendants' infringement, which both estoppel and acquiescence require.

#### a. Laches Fails As A Matter of Law

"Laches is an equitable time limitation on a party's right to bring suit … [which] bars trademark infringement claims 'only where the trademark holder ***knowingly*** allowed the infringing mark to be used ***without objection*** for a ***lengthy*** period of time.'" *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1138 (9th Cir. 2006) (emphasis added) (citations omitted); *Payless*, 546 F. Supp. 2d at 1068–69 (same). To establish laches, Defendants must prove: (1) adidas unreasonably delayed; and (2) as a result, Defendants suffered material prejudice. *Symantec Corp. v. CD Micro, Inc.*, 286 F. Supp. 2d 1265, 1272 (D. Or. 2003).

Defendants cannot meet their heavy burden for three reasons: First, adidas objected to Defendants' conduct at issue [redacted]—***one month*** after discovering Defendants' misconduct—and promptly filed suit on May 1, 2024 following a mediation [redacted]. Because no delay occurred, laches cannot apply. Second, all six factors bearing on the reasonableness of any purported delay weigh heavily against Defendants. And third, Defendants cannot show any material prejudice. Accordingly, the Court should enter summary judgment for adidas.

##### *i. Laches Cannot Apply Because adidas Did Not Delay*

Because the Lanham Act has no statute of limitations, courts measure laches—when a party knew or should have known of its claim—according to the analogous state-law statute of limitations. *Reno*, 452 F.3d at 1139. In Oregon, that means two years. *adidas Am., Inc. v. Payless Shoesource, Inc.*, 540 F. Supp. 2d 1176, 1180 n.1 (D. Or. 2008).

Here, adidas discovered Defendants' misconduct [redacted]—a purported "delay" of ***one month***. *See* NB Decl. ¶ 27, Ex. 23 (Ex.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

117 to Vanderhoff Dep.); Vanderhoff Dep. at 154:17–19.[17] When adidas sent its demand letter, the laches clock tolled because "the time that passes after a plaintiff sends a cease-and-desist letter to the defendant does not count for calculating the delay for a laches defense." *Louis Vuitton Malletier, S.A.S. v. Keep it Gypsy, Inc.*, No. 3:23-CV-2569-L, 2024 WL 3927819, at *4 (N.D. Tex. Aug. 8, 2024), *report and recommendation adopted sub nom. Malletier v. Keep It Gypsy, Inc.*, No. 3:23-CV-2569-L, 2024 WL 3933673 (N.D. Tex. Aug. 23, 2024); *Toyota Motor Sales, U.S.A., Inc. v. Tabari,* 610 F.3d 1171, 1183 (9th Cir. 2010).

After adidas sent the cease-and-desist letter, the parties attempted to negotiate a settlement, including engaging in a formal mediation [redacted]. *See* NB Decl. ¶ 4. adidas then immediately filed suit on May 1, 2024. Dkt. 1. Thus, even if "delay" were measured from the time adidas became aware of Defendants misconduct (December 2023) to the date adidas filed suit, the purported "delay" would be roughly four months at most.

Whether one month or four months, courts in trademark cases routinely have held as a matter of law that ***a "delay" so short cannot constitute an "unreasonable delay" to establish laches***. *See Regency Midwest Ventures Ltd. P'ship v. Best W. Int'l, Inc.*, No. CIV-16-02491-PHX-MHB, 2017 WL 992357, at *5 (D. Ariz. Mar. 15, 2017) ("Here, the delay was five months, an insufficient time lapse to establish laches"; dismissing laches defense at pleading stage); *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013, 1036 (C.D. Cal. 2011), *aff'd*, 738 F.3d 1085 (9th Cir. 2013) ("The Court finds [at summary judgment] that this fifteen month time frame does not constitute an unreasonable delay for purposes of establishing a laches defense."); *High Volatage Beverages, LLC v. Coca-Cola Co.*, No. 3:08CV367, 2011 WL 831523, at *4 (W.D.N.C.

[17] No evidence shows adidas was aware of Defendants' misconduct before December 2023. Defendants therefore cannot show adidas "knew or should have known" of Defendants' misconduct but unreasonably delayed before bringing suit. *See adidas Am., Inc. v. Payless Shoesource, Inc.*, 529 F. Supp. 2d 1215, 1251 (D. Or. 2007). Nor can Defendants "'make a showing that it would have been ***inconceivable*** that [adidas] would have been unaware' of those activities." *Id.* (emphasis added) (quoting *Off. Airline Guides, Inc. v. Churchfield Publ'ns, Inc.*, 756 F. Supp. 1393, 1404 (D. Or. 1990), *aff'd*, 6 F.3d 1385, 28 U.S.P.Q.2d 1641 (9th Cir. 1993)).



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Mar. 3, 2011) ("The court finds that as a matter of law, this short period of time[, 16 months,] cannot be considered 'unreasonable' delay."); *Philip Morris, Inc. v. Allen Distribs., Inc.*, 48 F. Supp. 2d 844, 854 n.13 (S.D. Ind. 1999) ("A few months of delay is not sufficient to constitute laches."); *see also Piper Aircraft Corp. v. Wag-Aero, Inc.*, 741 F.2d 925, 933 (7th Cir. 1984) ("[T]wo years has rarely, if ever, been held to be a delay of sufficient length to establish laches."). And this Court and the Ninth Circuit have held laches did not apply to much longer "delays." *See, e.g.*, *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1183 (9th Cir. 2010) (two-and-a-half years delay); *Off. Airline Guides*, 756 F. Supp. at 1405 (three years delay).

Because adidas did not delay whatsoever—but acted immediately upon becoming aware of Defendants' misconduct—laches is unavailable as a matter of law.[18] The Court should enter summary judgment against the laches defense on this basis alone.

### ***ii. The Equitable Factors Weigh Against Laches***

Because adidas did not delay, the Court need not examine whether the equitable factors show adidas timely acted. *See La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 878 (9th Cir. 2014) (explaining laches is a "two-step" analysis and only if the statutory period expired before a plaintiff filed suit does a court apply the factors). Regardless, these factors all favor adidas, including: (1) the "strength and value of [adidas's] trademark rights"; (2) adidas's diligence in enforcing its rights; (3) the harm to adidas should relief be denied; (4) whether Defendants acted "in good faith *ignorance*" of adidas's rights; (5) competition between adidas and Defendants; and (6) material prejudice to Defendants. *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 515 (9th Cir. 1989) (emphasis added).

[18] To the extent Defendants argue that adidas unreasonably delayed by failing to take enforcement action against any products that existed prior to the execution of the 2022 Agreement, that argument is barred by [redacted] 2022 Agreement ¶ 10 (emphasis added). [redacted].



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

***adidas's trademark rights are strong.*** adidas's Three-Stripe Mark is indisputably strong,[19] and applying laches to bar all of adidas's claims would undermine this axiomatic principal: "The stronger a mark … the greater the protection it is accorded by the trademark laws." *See La Quinta*, 762 F.3d at 874. This factor thus weighs heavily against laches. *See Clamp*, 870 F.2d at 515.

***adidas diligently enforces its Three-Stripe Mark.*** For many years, adidas has had an active enforcement program, expending great efforts to police the marketplace. *See* Vanderhoff Dep. at 209:17–210:8, 211:12–22, 213:7–22. Defendants agree, having asserted adidas is zealous in its enforcement. *See, e.g.*, Dkt. 28 at 17–18 (unclean hands affirmative defense). Thus, this factor weighs against laches.

***adidas would suffer considerable harm if relief were denied.*** Likelihood of confusion poses a significant threat to a brand owner's goodwill. *See SunEarth, Inc. v. Sun Earth Solar Power Co.*, 846 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) ("potential misidentification poses a serious threat to this goodwill and reputation").

***Defendants cannot claim ignorance of adidas's rights.*** After entering into *three* settlement agreements over the course of ten years, including promising [redacted] Defendants cannot feign ignorance of adidas's rights. *See Clamp Mfg.*, 870 F.2d at 515.

***The parties compete directly***. adidas and Defendants both sell athletic apparel, athleisure wear, casual clothing, and loungewear, including sweatpants, hoodies, sweatshirts, and leggings, and thus are direct competitors. *See* NB Decl. ¶¶ 30, 41, Exs. 26, 36 (examples of the parties' apparel); Murphy Dep. at 108:13–17 (describing adidas and Aviator Nation as competitors). The parties' products are even sold through the same retailers at similar price points. NB Decl. ¶ 42,

[19] As discussed, this Court repeatedly has found adidas's Three-Stripe Mark is a strong and protectable mark. *See, e.g.*, *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 752 (9th Cir. 2018) ("The Three–Stripe mark owned by adidas is one of the most famous marks in the world."); *Payless*, 546 F. Supp. 2d at 1056, 1063 (holding "the Three-Stripe Mark is strong").



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Ex. 37; *see also La Quinta*, 762 F.3d at 879 (affirming denial of laches defense when the parties' marks competed).

Thus, all of these factors favor adidas. Laches cannot apply.

***iii. Defendants Cannot Demonstrate Material Prejudice***

Because adidas did not delay, the Court also need not examine whether Defendants suffered prejudice. Nonetheless, Defendants cannot show actionable prejudice. *See Payless*, 540 F. Supp. 2d at 1181; *see also Reno*, 452 F.3d at 1139 ("[A] party asserting laches must show that it suffered prejudice as a result of the plaintiff's unreasonable delay in filing suit.") (citation modified).

To give rise to laches, any prejudice must be beyond "mere expenditures in promoting the infringed name"; to qualify, prejudice must be "based on an investment in [a mark] as the *identity of the business* in the minds of the public." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 992 (9th Cir. 2009); *Derek & Constance Lee Corp. v. Kim Seng Co.*, 391 F. App'x 627, 628 (9th Cir. 2010) (affirming denial of laches and explaining that "[t]he mere fact that Kim Seng's business grew based on the success of the Que Huong brand is insufficient to establish prejudice in the laches context"). No record evidence shows adidas's (nonexistent) delay led Defendants to invest in any mark as the identity of its business.[20]

The record is devoid of evidence of delay or prejudice. The laches defense therefore should be rejected as a matter of law.

**b. The Statute-Of-Limitations Defense Fails As A Matter Of Law**

Defendants' statute-of-limitations defense fails as a matter of law with respect to adidas's first, second, and third claims for relief (federal trademark infringement, federal unfair competition, and federal dilution, respectively) because the Lanham Act has no statute of

[20] This is known as expectation-based prejudice. However, Defendants also cannot demonstrate "evidentiary prejudice." *See Derek & Constance Lee Corp.*, 391 F. App'x at 628 ("Kim Seng has not cited any losses of witnesses or evidence [as a result of the delay] that would constitute evidentiary prejudice.").



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

limitations. *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 678 n.15 (2014) ("[T]he Lanham Act, which governs trademarks, contains no statute of limitations, and expressly provides for defensive use of equitable principles, including laches.").

It fails with respect to adidas's fourth and fifth claims arising under state law, because aside from Louisiana (which is one year), the statute of limitations for all of adidas's state claims is two years or longer.[21] As discussed above in Section II(C), adidas objected to Defendants' misconduct within a month of discovering it, and filed suit approximately four months after discovering it.

The statute-of-limitations defense similarly fails with respect to adidas's sixth claim for common-law trademark infringement. Oregon does not have a statute of limitations for infringement; thus, the nearest analogue—the statute of limitations for fraud—governs this claim, which is again two years. *See Payless*, 540 F. Supp. 2d at 1180 n.1 (citing Or. Rev. Stat. § 12.110); *Johannsen v. Brown*, 797 F. Supp. 835, 839–40 (D. Or. 1992)).

Finally, the statute-of-limitations defense fails with respect to adidas's seventh and eighth claims (breach of contract and breach of the implied covenant of good faith). "In Oregon, the statute of limitations for contract claims—which includes claims regarding the implied covenant of good faith and fair dealing—is six years." *Meunier v. Nw. Mut. Life Ins. Co.*, 51 F. Supp. 3d 1023, 1036 (D. Or. 2014). adidas indisputably sued within this limitations period.

#### c. Acquiescence And Estoppel Fail As A Matter of Law

Both acquiescence and estoppel require ***affirmative misleading conduct*** by a trademark owner. No record evidence is capable of showing that here. *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Est. Educ., Inc.*, 621 F.3d 981, 989 (9th Cir. 2010) (holding the "elements of a *prima facie* case for acquiescence are … (1) the senior user actively represented that it would

[21] For state dilution statutes, courts typically apply a laches-type rule and draw on the state's closest analogous statute of limitations. These statutes and the statute of limitations for adidas's state-law deceptive trade practices claims are included in the NB Declaration. *See* NB Decl. ¶¶ 45–46.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice"); *Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x 814, 817 (9th Cir. 2020) ("Equitable estoppel requires an admission, statement, or act inconsistent with a later claim.") (citation omitted); *Payless*, 529 F. Supp. 2d at 1257 ("Estoppel arises only when a party's conduct misleads another to believe that a right will not be enforced and causes him to act to his detriment in reliance upon this belief."). Defendants have not adduced any evidence supporting any of the elements of acquiescence or estoppel; no delay occurred; adidas never indicated it would not enforce the 2022 Agreement; and Defendants have not suffered any undue prejudice. The Court, therefore, should enter judgment in adidas's favor.

**2. Defendants Cannot Establish Unclean Hands**

Defendants' unclean hands defense fails as a matter of law for at least two reasons: Defendants identify no misconduct on adidas's part related to the substance of adidas's case; and adidas is entitled, as a matter of law, to enforce its legitimate trademark rights.

First, "[t]o make out an unclean hands defense, a trademark defendant 'must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims.'" *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)). Unclean hands does *not* bar a plaintiff's claims for general misdeeds (which Defendants also cannot show); instead, Defendants must show adidas committed an "unconscionable act" that "has immediate and necessary relation to the equity [the plaintiff] seeks in the … litigation." *Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011, 1017 (N.D. Cal. 2004). This means a trademark "defendant must show that [the] plaintiff used the trademark to deceive consumers." *Japan Telecom*, 287 F.3d at 870. No evidence whatsoever shows adidas used the Three-Stripe Mark to



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

deceive consumers. *See id.* at 872 (reversing unclean hands when no evidence showed plaintiff's use of its mark "misled consumers").

Second, the unclean-hands defense is unavailable when a plaintiff simply is enforcing its trademark rights through litigation. A defendant "may not rely on the 'allegedly unfair or improper filing of a trademark infringement lawsuit'" to argue unclean hands. *adidas Am., Inc. v. TRB Acquisitions LLC*, No. 3:15-CV-2113-SI, 2017 WL 337983, at *8 (D. Or. Jan. 23, 2017). Thus, to the extent Defendants assert adidas overstepped its rights in filing suit, that argument is unavailing.

Moreover, the well-established *Noerr-Pennington* doctrine empowers adidas to assert its trademark rights in federal court without fear of reprisal. *See id.* at *3. The *Noerr-Pennington* doctrine specifically prohibits Defendants from contending that adidas's enforcement of its trademark rights constitutes trademark misuse that amounts to unclean hands. *Id.* at *4.

**3. The "Ownership of Trademark Registrations" Defense Is Unavailing**

Defendants' fourth defense fails as a matter of law. This defense—which Defendants limit to adidas's *dilution* claim (Dkt. 28 at 18)—appears to be based on 15 U.S.C. § 1125(c)(6), which precludes asserting certain dilution claims against federally registered trademarks. *Id.* As a threshold matter, this subsection only applies to claims "brought … under the *common law* or a *statute of a State*"; it does *not* apply to federal claims. *Id.* § 1125(c)(6)(A) (emphasis added); 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 24:129 (5th ed.) ("*McCarthy*") (noting "the federal registration defense applies only to claims of dilution based on a violation of state law"). Thus, Defendants' fourth defense fails outright as to adidas's "dilution action under federal law." Dkt. 28 at 18.

It also fails as to adidas's state-law dilution claim. Preemption of state dilution claims under § 1125(c)(6) is trademark-specific—i.e., a federal registration only preempts state dilution targeting ***the exact mark*** that is the subject of the federal registration. *See* 15 U.S.C. § 1125(c)(6) ("[O]wnership of a valid registration … shall be a complete bar to an action … ***with respect to that***



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

***mark***") (emphasis added). But here, adidas is not challenging any of Aviator Nation's registered marks. Instead, adidas is challenging stripe designs that are ***not covered by*** any of Aviator Nation's trademark registrations.

The closest conceivable Aviator Nation federal registration is No. 5,466,926 for "a rectangle consisting of horizontal stripes arranged from top to bottom in the colors dark red-orange, light red-orange, orange and yellow":



*See* Dkt. 28 at 25; *id.* at Exhibit B.

None of the products adidas accuses of *dilution*, however, bear this mark. NB Decl. ¶ 29, Ex. 25 (Post-Discovery CDD Chart describing claims against each product). The only products that even come close to the color combination shown above bear ***vertical stripes*** with ***spaces*** between the five stripes. Because adidas is not challenging Defendants' use of Aviator Nation's registered marks, Defendants' fourth defense has no merit.

**4. Classic Fair Use; Utilitarian and/or Aesthetic Functionality**

Defendants' fifth defense (Classic Fair Use; Utilitarian and/or Aesthetic Functionality) also fails as a matter of law. Again, Defendants conflate distinct defenses with distinct elements. Nevertheless, each defense fails. Classic fair use does not apply because Defendants' use of stripes does not describe anything. Defendants' functionality defenses fail because they are contractually barred; the very assertion of them constitutes a breach of the 2022 Agreement.

**a. The Classic Fair Use Defense Fails As A Matter of Law**

Classic fair use requires a defendant to show that it used a term (1) "not as a trademark"; (2) in good faith; and (3) "only to describe its goods." *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002).

Here, there is no "term" at issue; instead stripe *designs* are at issue, which do not fit within a fair use defense because the designs, by their nature, do not *describe* anything. *See Skechers*, 890 F.3d at 757 (explaining that the Three-Stripe Mark (which uses parallel stripes like Defendants) is an "arbitrary and distinctive design"). Defendants' fair use defense fails as a matter of law for this reason alone.

Moreover, Defendants expressly allege that they use stripes as a mark, not "otherwise than as a mark." It is hornbook trademark law that "[t]he only type of use which can qualify as a 'classic fair use' is use by defendant in a *non-trademark sense*." 1 *McCarthy* § 11:46 (emphasis added). Here, Defendants admit they use "four- and five- multi-colored stripe trademarks, logos, labels, and other brand designations such that its apparel is unmistakably its own." Dkt. 28 ¶ 16. Defendants' fair-use defense thus fails on its face.

**b. The Functionality Defenses Fail Are Barred**

Defendants' functionality defenses are barred by the 2022 Agreement. Defendants agreed they [redacted] 2022 Agreement ¶ 3.3 (emphasis added). Defendants therefore are contractually barred from asserting functionality defenses. *See Sunrich Food Grp., Inc. v. Pac. Foods of Or., Inc.*, 233 F. Supp. 2d 1273, 1279 (D. Or. 2002) (holding prior contractual acknowledgement of validity of plaintiff's marks meant defendant was "estopped by this express, unambiguous representation from challenging the validity of these marks"). The very assertion of this defense constitutes yet another breach of contract causing harm to adidas in the form of unnecessary attorneys' fees.

**5. No Evidence Shows adidas Failed To Mitigate Damages**

To establish their sixth defense, Defendants must show adidas did not "take reasonable efforts to mitigate any of [its] alleged damages." *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

421, 431 (S.D.N.Y. 2010); *Joseph v. W. Linn Paper Co.*, No. 3:18-cv-1069, 2020 WL 2462439, at *4 n.6 (D. Or. Apr. 24, 2020) (articulating the "reasonable efforts" standard which a defendant "has the burden of proving") (applying Oregon law); *JUUL Labs, Inc. v. Chou*, 676 F. Supp. 3d 827, 848 (C.D. Cal. 2023) (same). Defendants *also* bear the burden of demonstrating "reasonable efforts would have reduced the damages." *Coastal Power Int'l, Ltd. v. Transcon. Cap. Corp.*, 10 F. Supp. 2d 345, 370 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 163 (2d Cir. 1999).

Defendants cannot meet their burdens. adidas acted a month after discovering Defendants' misconduct. *See supra* Section II(C). This fact alone defeats the failure-to-mitigate defense. *See LPD N.Y., LLC v. adidas Am., Inc.*, No. 15-CV-6360 (MKB), 2022 WL 4450999, at *25 (E.D.N.Y. Sept. 24, 2022) (rejecting failure-to-mitigate assertion because adidas's "chosen mitigation strategy was well within the bounds of reason"); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 180 (E.D.N.Y. 2016) (granting summary judgment when plaintiff initiated an investigation (not even a lawsuit) roughly a month after discovering defendants' infringing activities). Defendants agree, accusing adidas of constantly bullying them by raising objections. *See* Dkt. 28 at 17. This defense thus fails as a matter of law.

**6. No Evidence Shows adidas Failed To Perform Its Obligations**

Aviator Nation's seventh defense—that adidas's claims are barred either because adidas breached the 2022 Agreement or because the Agreement's release provision precludes suit—fails as a matter of law. Dkt. 28 at 19. The 2022 Agreement [redacted] 2022 Agreement ¶ 10. It further expressly states [redacted] *Id.* Here, adidas's claims relate only to conduct post-dating the 2022 Agreement.

The thinly-pleaded seventh defense does not identify how adidas allegedly "fail[ed] to perform," and Aviator Nation cannot demonstrate any such failure—let alone one "so material as



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

to justify the injured party in regarding the whole transaction as ended" at the time of Aviator Nation's breach. *See Mohr v. Lear*, 395 P.2d 117, 121 (Or. 1964); *see also Olmstead v. ReconTrust Co.*, 852 F. Supp. 2d 1318, 1322 (D. Or. 2012) (finding the plaintiff stated a breach claim even if it later breached the agreement *after* the defendant breached first). The Court should enter judgment against the seventh defense.

**7. Defendants' Preemption Defense Fails As A Matter Of Law**

Defendants' eighth defense, which contends adidas's claims are "preempted by federal law, copyright, antidilution, or trademark law, and/or by Aviator Nation's own federal trademark registrations" fails as a matter of law. Dkt. 28 at 19. First, breach-of-contract claims are not preempted by federal intellectual property law unless the contract is duplicative of rights already protected by federal law. *See, e.g.*, *Health Indus. Bus. Commc'ns Council Inc. v. Animal Health Inst.*, 481 F. Supp. 3d 941, 957–58 (D. Ariz. 2020) (holding the plaintiff's breach-of-contract claims were not preempted by federal copyright law because the contract contained more than a mere promise not to copy); *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 977 (N.D. Cal. 2013) (same); *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 922 (Fed. Cir. 1995) ("[F]ederal trademark law does not preempt contract enforcement either."). Here, the 2022 Agreement indisputably contains more than a recitation of federal trademark law. *See, e.g.*, 2022 Agreement ¶¶ 3, 4, 5, 6.1–6.2, 8.1.

Second, adidas's state trademark and related claims are not preempted by the federal Lanham Act. *See Golden Door, Inc. v. Odisho*, 646 F.2d 347, 352 (9th Cir. 1980) (rejecting the defendant's contention that the Lanham Act preempted the field of trademark law); 3 *McCarthy* § 22:2 ("Courts have uniformly held that the federal Lanham Act does not occupy the whole field of trademark and unfair competition law in such a way that it would preempt parallel state law.").

Third, adidas's trademark claims certainly are not preempted by the federal Copyright Act. *See Polar Bear Productions, Inc. v. Timex Corp.*, 384 F.3d 700, 721 (9th Cir. 2004) (holding state



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

trademark claim was not preempted by Copyright Act because "[c]opyright and trademark are related but distinct property rights"). The Court should enter summary judgment against Defendants' eighth defense.[22]

**8. The Contract-Related Affirmative Defenses Fail As A Matter Of Law**

Defendants' poor pleading—combined with their concession that the 2022 Agreement is valid (Dkt. 28 at 37 ¶ 39)—makes their contract-related defenses 9–14 (Mistake, Indefiniteness, Misrepresentation, Ambiguity/Parol Evidence, Excuse/Discharge, and Reformation) incomprehensible. Nevertheless, they fail as a matter of law for three reasons.

First, Defendants' own pleadings admit the existence and enforceability of the 2022 Agreement. In their Counterclaims, Aviator Nation seeks to enforce its alleged rights under the 2022 Agreement, affirmatively conceding the agreement's validity. *Id.* [redacted]. Mycoskie 30(b)(6) Dep. at 315:14–18. A party cannot simultaneously sue to enforce a contract and assert defenses premised on the contract's invalidity or uncertainty. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (citation omitted). Defendants therefore are estopped from asserting affirmative defenses challenging the 2022 Agreement's validity.

Second, the 2022 Agreement's integration clause states [redacted] 2022 Agreement ¶ 20. "An integration clause refers to language in a writing or writings adopted by the parties contracting, whereby the parties state that the writing is the final and complete expression of the parties' agreement." *Nettleton v. Exact Scis. Corp.*, 645 F. Supp. 3d 1049, 1056 n.3 (D. Or. 2022) (applying Oregon law) (explaining that no intrinsic evidence is

[22] As to preemption by Aviator Nation's "federal registrations," *see supra* III.B.3



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

admissible to define or contradict the terms of an integrated agreement), *aff'd*, No. 23-35399, 2024 WL 3579334 (9th Cir. July 30, 2024). Under Oregon law, such a clause bars reliance on extrinsic evidence to vary or contradict the written terms. *State for Use & Benefit of Cipriano v. Triad Mech., Inc.*, 144 Or. App. 106, 115, 925 P.2d 918, 923 (1996) ("[W]hen the writing is complete on its face, we presume that the parties intended the writing to be a complete integration …. [A]n integration clause in a writing is an indication that the writing was intended to be a complete integration[.]"). Defenses grounded in alleged ambiguity, mistake, or parol evidence thus cannot survive an integrated agreement with a clear integration and merger clause.[23] *See id.*

Third, no evidence demonstrates any misunderstanding or mistake in entering into the 2022 Agreement, much less clear and convincing evidence. *See Aero Sales, Inc. v. City of Salem*, 200 Or. App. 194, 196, 114 P.3d 510, 511 (2005) ("A party seeking reformation of a contract has the burden to establish the following elements by *clear and convincing evidence* … that there was an antecedent agreement to which the contract can be reformed [and] that there was a mutual mistake or a unilateral mistake on the part of the party seeking reformation and inequitable conduct on the part of the other party[.]" (emphasis added)). Because the contract is indisputably valid, and no evidence shows otherwise, all of Defendants' contract-related defenses fail as a matter of law.

## V. CONCLUSION

For the foregoing reasons, the Court should grant summary judgment on adidas's claims that Aviator Nation breached the parties' 2022 Agreement by continuing to sell and market certain SKUs (CDDs 1–2, 6–7, 11–12, and 14); revealing confidential information; and challenging adidas's trademark rights. It should also grant summary judgment against all of Defendants' thirteen remaining affirmative defenses.

[23] The 2022 Agreement was formed through an arm's length mediation where the Parties were represented by counsel. NB Decl. ¶ 3; Vanderhoff Dep. at 169:11–17.



**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

DATED: November 24, 2025

Respectfully submitted,


**PERKINS COIE LLP**

By: /s/ *R. Charles Henn Jr.*
Stephen M. Feldman, OSB No. 932674
SFeldman@perkinscoie.com
**PERKINS COIE LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

R. Charles Henn Jr. (*pro hac vice*)
chenn@ktslaw.com
Charles H. Hooker III (*pro hac vice*)
chooker@ktslaw.com
Bethany R. Nelson (*pro hac vice*)
brnelson@ktslaw.com
Alexander Weathersby (*pro hac vice*)
aweathersby@ktslaw.com
Natalie Baber (*pro hac vice*)
nbaber@ktslaw.com
**KILPATRICK TOWNSEND & STOCKTON LLP**
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404.815.6500
Facsimile: 404.815.6555

*Attorneys for Plaintiffs*