IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ADIDAS AMERICA, INC. and ADIDAS AG, | Case No.: 3:24-cv-00740-AN |
| Plaintiffs, | |
| v. | |
| | OPINION AND ORDER |
| AVIATOR NATION, INC. and PAIGE MYCOSKIE, | |
| Defendants. | |

Plaintiffs adidas America, Inc. and adidas AG (together, "adidas") bring this action against defendants Aviator Nation, Inc. and Paige Mycoskie (together, "Aviator Nation"), alleging trademark infringement in violation of 15 U.S.C. §§ 1114 and 1125(a); unfair competition in violation of 15 U.S.C. § 1125(a); trademark dilution in violation of 15 U.S.C. § 1125(c); trademark dilution and injury to business reputation in violation of several states' antidilution laws; unfair and deceptive trade practices in violation of several states' unfair and deceptive trade practices statutes; common law trademark infringement and unfair competition; breach of contract; and breach of the implied duty of good faith and fair dealing.[1]

Pending before the Court are several discovery disputes. To begin, on April 25, 2025, Aviator Nation filed a motion to compel. Aviator Nation then emailed the Court requesting an order compelling additional discovery on May 21, 2025. These two disputes are together referred to as "Aviator Nation's motion to compel." On July 28, 2025, Aviator Nation filed a motion for discovery sanctions. On August 19, 2025, adidas filed a motion to strike regarding costs and deductions, and on August 28, 2025, adidas filed a second motion to strike regarding Pantones. For the following reasons, Aviator Nation's motion to compel and motion for discovery sanctions, and adidas's motions to strike, are all DENIED.

//

---

[1] All claims are asserted against both defendants except adidas's breach of contract and breach of the implied duty of good faith and fair dealing claims, which are asserted only against Aviator Nation, Inc.

## LEGAL STANDARDS

### A.    Motion to Compel

Federal Rule of Civil Procedure 26(b)(1) limits the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  District courts have "broad discretion" in determining whether information sought is relevant for discovery purposes.  *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).  A court must limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[,]" or if the proposed discovery is outside the scope permitted by Rule 26(b)(1).  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).  Ultimately, the threshold for establishing relevance is a low one.  *See, e.g.*, *Nationstar Mortg., LLC v. Decker*, No. 3:13-cv-1793-PK, 2015 WL 519884, at *2 (D. Or. Feb. 9, 2015).

A party may move for an order compelling a discovery response.  Fed. R. Civ. P. 37(a)(3)(B).  The movant has the initial burden of demonstrating the relevance of the discovery sought, and the burden then shifts to the party opposing discovery to demonstrate why it should not be permitted.  *United States v. McGraw-Hill Cos.*, No. CV 13-779-DOC (JCGx), 2014 WL 1647385, at *8 (C.D. Cal. Apr. 15, 2014).

### B.    Motion for Discovery Sanctions

Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . , unless the failure was substantially justified or is harmless."  The prohibition on the introduction of certain evidence under Rule 37(c) is a "self-executing, automatic sanction to provide a strong inducement for the disclosure of material."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (cleaned up).  "The party facing sanctions bears the burden of proving that its failure to disclose the required

2

information was substantially justified or is harmless." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1073 (9th Cir. 2022) (citation and quotation marks omitted).

Beyond exclusion sanctions, Rule 37(c) provides courts with several other options to handle failures to disclose information, ranging from "inform[ing] the jury of the party's failure" to produce, to "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(c). These options are not exclusive; a court may "impose other appropriate sanctions," including, for example, reopening fact discovery. Fed. R. Civ. P. 37(c)(1)(C); *see Bess v. Cate*, 422 F. App'x 569, 571 (9th Cir. 2011); *see also G & E Real Est., Inc. v. Avison Young-Wash., D.C., LLC*, 323 F.R.D. 67, 71 (D.D.C. 2017). Ultimately, the Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 859 (9th Cir. 2014) (citation and quotation marks omitted).

## C.      Motion to Strike

Federal Rule of Civil Procedure 16(f) provides, in relevant part, that if a party or a party's attorney "fails to obey a scheduling or other pretrial order," a court "may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)." Fed. R. Civ. P. 16(f)(1); *see Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005) ("Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence."). Subsections (ii) to (vii) of Rule 37(b)(2)(A) delineate the following sanctions:

(ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii)    striking pleadings in whole or in part;
(iv)    staying further proceedings until the order is obeyed;
(v)     dismissing the action or proceeding in whole or in part;
(vi)    rendering a default judgment against the disobedient party; or
(vii)   treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vii).

//

3

## BACKGROUND

**A.      Factual Allegations**

adidas alleges the following facts.  In 2011, adidas learned that Aviator Nation was offering for sale and selling a variety of apparel that adidas believed infringed on its three-stripe trademark (the "Three-Stripe Mark"), which is "famous and distinctive," "covered by numerous incontestable federal trademark registrations," "readily recogniz[able]" and "uniquely associate[d] [] with adidas" by consumers, and repeatedly held to be famous by federal courts. 2d Am. Compl. ("SAC"), ECF 26, ¶¶ 1, 40-41.  The parties entered a settlement agreement in 2012 (the "2012 Agreement") which provided, in relevant part, that Aviator Nation would "not [] produce, manufacture, promote, offer for sale, or sell the [] [i]nfringing [a]pparel" or "produce[] or sell products confusing[ly] similar to the Three-Stripe Mark." *Id.* ¶¶ 42-43.

In 2012, adidas again learned that Aviator Nation was "offering for sale and selling apparel featuring three parallel stripes in violation of adidas's common law and registered trademark rights and in breach of the" 2012 Agreement. *Id.* ¶ 44.  Following further communication, in 2013, "the parties entered into a letter agreement, according to which Aviator Nation stopped selling the 2012 [i]nfringing [a]pparel" and "affirmed [its] acknowledgment of adidas's rights[.]" *Id.* ¶¶ 45-46.

In 2018, adidas "again learned that Aviator Nation was offering for sale and selling apparel featuring a stripe design that is confusingly similar to adidas's famous Three-Stripe Mark and in breach of the 2012 Agreement." *Id.* ¶ 47.  While attempting to resolve this issue, in 2019, adidas learned that Aviator Nation had begun offering for sale and selling additional infringing apparel bearing three stripes. *Id.* ¶ 50. When the parties could not reach informal resolution, adidas "filed a lawsuit styled *adidas America, Inc. et al v. Aviator Nation, Inc.*, [] No. 3:19-cv-02049-HZ, asserting claims for breach of contract, trademark infringement and dilution, unfair competition, and counterfeiting (the '2019 Lawsuit')." *Id.* ¶ 51.

The 2019 Lawsuit resolved in 2022, when the parties entered into a settlement agreement (the "2022 Settlement Agreement") in which Aviator Nation agreed, in relevant part, "not to produce, manufacture, distribute, sell, offer for sale, advertise, promote, license, or market" certain infringing apparel, including certain specific apparel identified by adidas and "anything confusingly similar to the Three-Stripe Mark."

*Id.* ¶¶ 52, 54-55.  As part of the 2022 Settlement Agreement, "Aviator Nation also agreed expressly not to take any action contesting or impairing adidas's right, title, and interest the Three-Stripe Mark[,]" including agreeing "not to assert that the Three-Stripe Mark lacks distinctiveness, or that it is generic, descriptive, functional, or ornamental."  *Id.* ¶ 56.



Decl. of Charles Hooker Supp. Pls. 2d Mot. to Strike ("Hooker Decl."), ECF 65-1, at Ex. A at 4-8.

*Id.* at Ex. A at 4-5.

In early 2024, adidas discovered "that Aviator Nation, at [] Mycoskie's direction, was still selling apparel indistinguishable from the very items Aviator Nation agreed not to sell[.]"  SAC ¶¶ 58-60.  In January 2024, Mycoskie "publicly disclosed and misrepresented the parties' prior disputes and key terms of the[] 2022 [S]ettlement [A]greement" while on National Public Radio ("NPR"), in violation of the 2022 Settlement Agreement's confidentiality provisions.  *Id.* ¶ 74.  The parties engaged in mediation, though Mycoskie did not attend in-person.  *See id.* ¶ 72.  When mediation failed, on May 1, 2024, adidas commenced this action.  Compl., ECF 1.

---

[2] The 2022 Settlement Agreement is referenced in and attached to the SAC, *see* SAC ¶¶ 3-4 & Ex. 1, and Aviator Nation has not questioned its authenticity.

[3] Per adidas's second motion to strike, "Pantones are a system of alphanumeric codes for the categorization of colors."  Pls. Mot. to Strike Evid. Re: Pantones ("Pls. 2d Mot."), ECF 65, at 3 n.1 (citing *What Are Pantone Color Systems?*, PANTONE.com, https://www.pantone.com/color-systems/pantone-color-systems-explained (last visited Aug. 20, 2025)).

[4]

**B.    Procedural History**

adidas amended its complaint for the first time on June 7, 2024, 1st Am. Compl., ECF 12, and then for a second time on December 6, 2024, SAC. The SAC is the operative complaint and maintains federal, state, and common law claims primarily centering around allegations of trademark infringement and dilution, unfair and deceptive trade practices and competition, and breaches of contract and the implied duty of good faith and fair dealing. *See* SAC ¶¶ 79-137. Ultimately, adidas asks the Court to enjoin Aviator Nation from distributing, marketing, or selling apparel using or bearing confusingly similar imitations of the Three-Stripe Mark; for a damages award, trebled; to require defendants to disgorge all of their profits from their sale of infringing apparel; and for an award of punitive damages, attorney's fees, and costs. *Id.* at 51-53.

In February 2025, adidas emailed the Court to request a telephone status conference to address three discovery issues. Order of July 30, 2025, ECF 58, at Ex. 2 at 3-4. Through this conference, adidas sought an order compelling Aviator Nation "to: (1) complete a reasonable and diligent search for documents responsive to adidas's discovery requests; (2) provide reasonable deposition availability for [] Mycoskie, . . . ; and (3) provide sales data for a limited number of approximately a dozen SKUs (stock keeping units) of Aviator Nation apparel that adidas discovered *after* filing" the SAC. *Id.* adidas argued, in relevant part, that Aviator Nation produced only 424 documents despite initially sharing a hit count of more than 200,000 documents when using the parties' agreed upon search terms. *Id.* at 4. Aviator Nation responded in opposition, *id.* at 1-3, and the Court held a telephone status conference pursuant to Local Rule 26-3(f), Mins. of Proceedings of February 25, 2025, ECF 32. Following the telephone status conference, the Court granted adidas's request for an order compelling Aviator Nation to complete a reasonable and diligent search for documents responsive to plaintiffs' discovery requests and, based on the parties' representations at the telephone status conference, noted that the issues of Mycoskie's deposition availability and Aviator Nation's production of sales data for newly identified product SKUs had become moot. Mins. of Proceedings of February 25, 2025, ECF 32. The Court also directed the parties to confer and provide to the Court a revised fact discovery deadline. *Id.*

6

On March 3, 2025, the parties submitted an amended stipulated case schedule to the Court via email. Decl. of R. Charles Henn Supp. Pls. 1st Mot. to Strike ("Henn Decl."), ECF 63-1, ¶ 3 & Ex. A. The amended schedule establishes a July 15, 2025 deadline "to serve initial expert reports from party bearing burden of proof on an issue"; an August 15, 2025 deadline "to serve initial expert reports from party not bearing the burden of proof on an issue"; and a September 15, 2025 deadline "to exchange rebuttal expert reports." *Id.*

On April 1, 2025, adidas emailed the Court with another discovery dispute, asserting that despite the Court's February 25 order, Aviator Nation "relied on individual custodians to self-select text messages they individually deem[ed] responsive" and ultimately "produced only incomplete, fragmentary screenshots without any context or metadata." Order of July 30, 2025, at Ex. 3 at 6. Aviator Nation timely responded in opposition. *See id.* at Ex. 3 at 1-2. Following another telephone status conference pursuant to Local Rule 26-3(f), the Court granted adidas's request and ordered Aviator Nation to:

1.  collect complete text message and chat data from all of defendants' custodians from whom defendants have produced fragmentary text message screenshots and chats to date;
2.  run the search terms on this data that defendants agreed to run across the data they collected in this case; and
3.  produce all responsive, relevant texts and chats with their metadata and with sufficient context to understand them.

Mins. of Proceedings of April 8, 2025, ECF 41. Document discovery closed on April 25, 2025. Decl. of Bethany R. Nelson Supp. Pls. Resp. to Defs. Mot. to Compel ("Nelson Decl."), ECF 48-1, ¶ 7 (citing Order of August 8, 2024, ECF 22). The parties completed fact depositions by June 13, 2025. Henn Decl. Ex. A.

On July 15, 2025, adidas served an expert report by John Plumpe on Aviator Nation. *Id.* ¶ 4 & Ex. B. Aviator Nation did not serve any expert reports on July 15. *Id.* ¶ 5.

On August 15, 2025, Aviator Nation served expert reports by William N. Holmes (the "Holmes Report") and Jill Morton (the "Morton Report") on adidas. *Id.* ¶ 6 & Ex. C (Holmes); Hooker Decl. ¶ 17 & Ex. O (Morton).

## DISCUSSION

Four discovery motions are currently pending before the Court: (1) Aviator Nation's motion to

compel; (2) Aviator Nation's motion for discovery sanctions; (3) adidas's first motion to strike; and (4) adidas's second motion to strike. The Court addresses the motions in the order in which they arose.

**A.      Aviator Nation's Motion to Compel**

On April 22, 2025, Aviator Nation emailed the Court a nine-page letter motion to compel. *See* Order of July 30, 2025, at Ex. 4. Because the motion addressed several categories of documents and provided citation to case law on multiple issues, the Court directed Aviator Nation to file the motion on the docket, which Aviator Nation did on April 25, 2025. *See* Defs. Mot. to Compel, ECF 45. In the motion, Aviator Nation seeks an order compelling adidas to produce evidence concerning (1) the quality and consumer perception of adidas's apparel and brand; (2) adidas's profits and evidence of lost sales; and (3) deposition transcripts and exhibits marked at deposition and trial from lawsuits between adidas and Fashion Nova, Inc. and Thom Browne, Inc. *Id.* at 4, 8, 10. adidas timely responded. Pls. Resp. to Defs. Mot. to Compel, ECF 48.

Then, on May 21, 2025, Aviator Nation emailed the Court requesting another order compelling additional discovery. Order of July 30, 2025, at Ex. 5 at 5-6. Specifically, Aviator Nation asks the Court to compel adidas to "collect complete text message data from its custodians" and "run search terms on this text message data," and then "produce all responsive, relevant texts with their metadata and with sufficient context to understand them." *Id.* at 6. adidas responded via email on May 27, 2025, *id.* at 2-4, and the Court subsequently held a telephone status conference pursuant to Local Rule 26-3(f), Mins. of Proceedings of June 11, 2025, ECF 50. The Court addresses each of these four issues in turn.

1.       *Quality & Reputation Evidence*

First is the issue of the quality and consumer perception of adidas's apparel and brand, which the Court generally refers to here as quality and reputation evidence. At issue in this portion of Aviator Nation's motion to compel are Aviator Nation's requests for production ("RFP") Nos. 51, 52, 64, 81, and 88. Defs. Mot. to Compel 4. Together, these requests seek

> (1) documents reflecting customer complaints, and adidas's concerns, about the quality, durability, or performance of adidas's products bearing the Three-Stripe Mark; (2) documents that describe any measure of customer satisfaction with adidas's apparel;

(3) documents that describe consumer perception of the quality of adidas's apparel; and (4) documents reflecting any potential or actual harm caused to adidas or its Three-Stripe Mark as a result of adidas's past association and/or business ventures with Kanye West.

*Id.* adidas objected to these requests based on relevance and did not produce responsive documents or designate a witness in response to Aviator Nation's Rule 30(b)(6) deposition notice. *Id.* adidas argues that these topics are not relevant because adidas (1) asserts a trademark dilution by *blurring* cause of action, not dilution by *tarnishment*; and (2) does not seek lost sales or profits as a form of actual damages. Pls. Resp. to Defs. Mot. to Compel 2.

RFP Nos. 51 and 52 together seek "[a]ll [d]ocuments comprising (or summarizing) customer complaints about the quality, durability, or performance of apparel and footwear products bearing the Asserted Marks in December 2023 and December 2024," as well as all documents referring to adidas's "concerns" regarding the same. Decl. of Mohammed N. Workicho Supp. Defs. Mot. to Compel ("Workicho Decl."), ECF [45-1], at Ex. 1 at 32-33.[5] RFP No. 64 seeks "[a]ll [d]ocuments reflecting any potential or actual harm caused to Plaintiffs or any of its brands . . . as a result of Plaintiffs' association past association and/or business ventures with Kanye West dated after the date of the last document collection performed by Plaintiffs in the 2019 Litigation." *Id.* at 38. RFP Nos. 81 and 88 together seek "[d]ocuments that describe any measure of customer satisfaction with Plaintiffs' apparel" and "that describe consumer perception of the quality" of various items of adidas's apparel bearing the Three-Stripe Mark. *Id.* at Ex. 5 at 242, 246. For the reasons next described, these quality and reputation documents are not relevant where adidas does not assert a dilution by tarnishment cause of action.

Dilution by blurring and dilution by tarnishment are distinct legal theories. *See Horphag Research Ltd. v. Garci*, 475 F.3d 1029, 1037 n.7 (9th Cir. 2007). "Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Id.* at 1037 (citation and quotation marks omitted). This theory of trademark dilution "protects the benefits that flow from a sharp and distinct

---

[5] All citations refer to ECF pagination.

connection between one mark and one product." *Id.* (citation omitted). In contrast, dilution by tarnishment occurs when a defendant's "use of [a plaintiff's] mark is likely to cause an association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." *Mintz v. Subaru of Am., Inc.*, 716 F. App'x 618, 621 (9th Cir. 2017) (citation and quotation marks omitted). *Compare* 15 U.S.C. § 1125(c)(2)(B) (explaining that "'dilution by blurring' is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark" and providing list of relevant factors for consideration that do not mention quality or reputation), *with id.* § 1125(c)(2)(C) (explaining that "'dilution by tarnishment' is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark"). adidas does not assert a claim for dilution by tarnishment in this case, and thus, quality and reputation evidence does not appear to be relevant.

Aviator Nation's primary argument is that adidas's dilution by blurring claim "necessarily implicates both the distinctiveness and associations with the Three-Stripe Mark" and, importantly, "to support a dilution claim, adidas will presumably seek to offer lay and expert testimony about the alleged strength of its brand and the positive associations consumers have with its brand." Defs. Mot. to Compel 5. These arguments fail. Aviator Nation does not cite to any case law supporting the proposition that quality and reputation evidence is relevant where there is no dilution by tarnishment claim asserted, and the Court is not aware of any. adidas avers that it is not pursuing a claim for dilution by tarnishment or otherwise relying on the comparative quality of the parties' apparel in this case. Nelson Decl. ¶ 3; Workicho Decl. ¶ 2 & Ex. 1 at 32-33. Thus, the Court finds that Aviator Nation's requests for quality and reputation documents are not proportional to the needs of this case. *See Delta Air Lines, Inc. v. Marriott Int'l, Inc.*, No. 1:20-cv-1125-ELR-JCF, 2021 WL 12121916, at *9-10 (N.D. Ga. June 25, 2021) (denying the defendant's motion to compel customer complaints regarding the plaintiff's services where the plaintiff brought a claim for dilution by blurring but not for dilution by tarnishment).

The three primary cases cited by Aviator Nation, all of which involved adidas, do not require—or even suggest—a different outcome. First, in *Adidas America, Inc. v. Skechers USA, Inc.*, the Ninth Circuit

10

affirmed the district court's finding that adidas showed a likelihood of success on the merits of its dilution claim but was not entirely clear as to what theory underlay that dilution claim. 890 F.3d at 758-59. However, review of the district court's opinion and the underlying pleadings shows that adidas asserted both blurring and tarnishment theories in that case. *See Adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1247 (D. Or. 2016) (explaining elements for both blurring and tarnishment theories before analyzing dilution); *and see Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-cv-01741-HZ, ECF 201, at 27-28 (asserting in the operative complaint a claim for federal trademark and trade dress dilution premised on the defendant Skechers's "tarnishing and degrading [of] the positive associations and prestigious connotations of the marks" and general "intent to trade on the goodwill associated with adidas's Three-Stripe Mark," and ultimately alleging that Skechers's actions "caus[ed] irreparable injury to adidas's goodwill and business reputation"). The second case cited is adidas's suit against Fashion Nova, Inc. Defs. Mot. to Compel 8. But adidas avers that, like in *Skechers*, it did pursue a dilution by tarnishment claim against Fashion Nova. Nelson Decl. ¶ 14. *Skechers* and *Fashion Nova* are thus materially distinguishable.

The third case is adidas's suit against Thom Browne, Inc. In this case, it appears that adidas did not assert a dilution by tarnishment claim, thus making it a closer analogy to the case at hand. However, Aviator Nation nonetheless fails to adequately explain why the case against Thom Browne makes relevant all of the quality and reputation evidence that adidas seeks. Aviator Nation argues that this evidence is relevant when considered in the context of adidas's case against Thom Browne because (1) in that case, despite there being no dilution by tarnishment claim, adidas argued at length about "the distinctiveness and associations with the Three-Stripe Mark" and "the alleged strength of its brand and the positive associations consumers have with its brand"; and (2) that the cases involved "identical" issues—"the use of stripes on apparel." Defs. Mot. to Compel 5-7, 10-11. The first point fails where, as discussed, defendants have cited to no authority supporting the proposition that quality and reputation evidence is inherently relevant to discussion of the distinctiveness and strength of a plaintiff's trademark. In the absence of such authority, the Court declines to find relevance simply based on arguments adidas made in a case against a different defendant multiple years ago. *See* Tr. of Proceedings of June 11, 2025, ECF 54, at 10:9-12 (indicating the

11

trial against Thom Browne, Inc. occurred two years prior). As to the second point, that both suits generally concern the use of stripes on apparel is too broad and cursory an argument to support compelling production of the vast quality and reputation evidence Aviator Nation seeks here.[6]

For all of these reasons, Aviator Nation's motion to compel is denied as to RFP Nos. 51, 52, 64, 81, and 88.[7]

2.      *Evidence of adidas's Profits & Lost Sales*

At issue in the next portion of Aviator Nation's motion to compel are RFP Nos. 74, 75, 76, and 77, and Interrogatory Nos. 14 and 16, in which Aviator Nation asks adidas to:

> (a) provide its total annual gross and net profits from 2020 through 2024 in the United States from the sale of apparel bearing the Three-Stripe Mark; (b) produce documents

---

[6] Aviator Nation also cites several other cases that need not be given lengthy discussion. First, Aviator Nation cites *Nationstar Mortgage, LLC v. Decker* for the proposition that: "'Relevancy for discovery purposes is a very low threshold.'" Defs. Mot. to Compel 5 (quoting *Nationstar Mortg., LLC v. Decker*, No. 3:13-cv-01793-PK, 2015 WL 519884, at *2 (D. Or. Feb. 9, 2015)). This general proposition may be true, but it does not address the more discrete issues before the Court.

Second, Aviator Nation cites to *AMF, Inc. v. Sleekcraft Boats* for the proposition that: "Aviator Nation's intent is one of the factors courts consider in determining whether Aviator Nation's products are likely to cause customer confusion." Defs. Mot. to Compel 7-8 (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). However, that intent is a relevant factor does not explain why consideration of Aviator Nation's intent here makes relevant the vast quality and reputation evidence Aviator Nation seeks. To the extent that Aviator Nation argues that its intent is relevant here because it indicates that Aviator Nation did not intend to trade on adidas's goodwill (and therefore did not intend to cost adidas sales or profits), *see Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 F. App'x 459, 460 n.2 (9th Cir. Apr. 20, 2020), this argument is too attenuated to impose on adidas the burden of producing the expansive quality and reputation evidence that Aviator Nation seeks.

Third and finally, Aviator Nation cites to *Romag Fasteners, Inc. v. Fossil, Inc.*, for the proposition that: "'[A] trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate.'" Defs. Mot. to Compel 8 (quoting *Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 219 (2020)). This cite suffers the same flaw as the cite to *Sleekcraft*. Though *Romag* supports the proposition that "a defendant's mental state is relevant to assigning an appropriate remedy," 590 U.S. at 219, Aviator Nation does not sufficiently argue that its mental state warrants production of the quality and reputation evidence at issue here.

[7] RFP No. 64 appears to also lack temporal relevance: adidas alleges that the infringement at issue in this case began in May 2023, but the evidence before the Court indicates that adidas ended its business relationship with Kanye West in 2022. *See* Nelson Decl. ¶ 8 & Ex. 3. To the extent that Aviator Nation argues that it would not have infringed on adidas's Three-Stripe Mark in May 2023 because of adidas's pre-2022 associations with Kanye West, *see* Defs. Mot. to Compel 6-7, the Court concludes that this argument is too attenuated to impose on adidas the burden of producing internal communications outside the timeframe at issue in this case, *see* Pls. Resp. to Defs. Mot. to Compel 5 n.5. Similarly, to the extent that Aviator Nation argues that this evidence provides an alternative theory of harm suffered by adidas, the Court concludes that this argument must fail where adidas does not seek lost sales or profits.

> sufficient to establish its profit margins with respect to shorts, sweatshirts, and sweatpants; and (c) produce information concerning every instance of a lost sale as a result of Defendants' alleged actions.

Defs. Mot. to Compel 8. adidas contends "that these topics are not relevant because [adidas] does not intend to seek lost sales or lost profits as a measure of actual damages," and thus has refused to either respond to these requests or designate a witness for a Rule 30(b)(6) deposition. *Id.*

Much like how dilution by blurring is a distinct legal theory from dilution by tarnishment, lost sales and profits are a distinct type of damages from disgorgement of profits. *See, e.g.*, *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1075 (9th Cir. 2015) (noting that disgorgement of a defendant's profits is an equitable remedy, as contrasted against an actual damages remedy of a plaintiff's own lost sales or profits); *and see Paramount Farms Int'l LLC v. Keenan Farms Inc.*, No. 2:12-cv-01463-SVW-E, 2012 WL 12892420, at *2 (C.D. Cal. Dec. 6, 2012) (distinguishing between calculating a plaintiff's lost sales or profits, i.e., actual damages, and a defendant's profits from infringing sales, i.e., an equitable remedy). Here, adidas does not seek lost sales or profits as a form of damages. Nelson Decl. Ex. 1 at 6; Workicho Decl. ¶ 2 & Ex. 1 at 32-33. And Aviator Nation has not adequately shown that or explained why evidence of lost profits or sales is relevant to the relief actually requested in this case: disgorgement of profits. Indeed, each case cited by Aviator Nation on this point is inapposite. *See* Defs. Mot. to Compel 8-10 (citing *Stone Creek, Inc. v. Omnia Italian Design, Inc.*, 808 F. App'x 459, 460 (9th Cir. Apr. 20, 2020) (affirming denial of request for disgorgement of a defendant's profits where the sales in question "were not attributable to the infringement," without discussion of whether evidence relating to a plaintiff's lost sales or profits are relevant to disgorgement); *Harbor Breeze Corp. v. Newport Landing Sportfishing, Inc.*, No. SACV 17-01613-CJC (DFMx), 2023 WL 2652855, at *4-9 (C.D. Cal. Mar. 13, 2023) (citations omitted) (discussing diverted sales in considering whether disgorgement was appropriate in a false advertising claim, without discussion of trademark infringement, dilution, or unfair competition); *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) (holding that "[n]othing in the Lanham Act conditions an award of profits on [a] plaintiff's proof of harm, and [the Ninth Circuit has] held that profits may be awarded

13

in the absence of such proof").[8]

Aviator Nation primarily contends that "this discovery is relevant to the first of the *Sleekcraft* factors, the alleged strength of adidas's mark." Defs. Mot. to Compel 8. This argument fails. Aviator Nation cites no authority in support of the proposition that a plaintiff's lost sales or profits are relevant to the strength of that plaintiff's trademark, and the Court is aware of none. Indeed, while the leading treatise on trademark infringement and dilution indicates that "evidence of advertising and sales is relevant to prove the strength of a mark," J. Thomas McCarthy, 3 *McCarthy on Trademarks and Unfair Competition*, § 11:81 (5th ed.) (also discussing considerations of third-party use, survey evidence, and recognition by consumers), it does not show that evidence of profits, profit margins, or *lost* sales are relevant to prove the strength of a mark. Aviator Nation has not met its burden of establishing the relevance of this evidence, particularly in light of the persuasive authority suggesting that such evidence is not relevant where adidas does not seek lost sales or profits as a form of damages. *See, e.g.*, *Hope Med. Enters, Inc. v. Fagron Compounding Servs., LLC*, No. CV 19-7748-CAS (PLAx), 2020 WL 2771233, at \*8 (C.D. Cal. Mar. 31, 2020) (ordering production of evidence of lost profits "unless [the plaintiff] affirmatively confirms . . . that it will not under any circumstances seek its lost profits at trial"); *Hard Candy LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1354 (11th Cir. 2019) ("[W]hen a plaintiff seeks an accounting and disgorgement of profits as a remedy for trademark infringement, the focus is entirely on the alleged infringer's gain; the plaintiff is not

---

[8] On this point, Aviator Nation also cites *Romag Fasteners, Inc.*, 590 U.S. at 218-19. For similar reasons to those discussed in footnote 7, *supra*, the Court is not persuaded that *Romag Fasteners, Inc.* warrants compelling production of evidence of adidas's lost sales or profits. In *Romag Fasteners*, the Supreme Court ultimately reasoned that while "a defendant's mental state is relevant to assigning an appropriate remedy," a finding of willfulness is not a prerequisite to an award of profits. *Id.* The Supreme Court did not specify that it was considering "disgorgement" but did make clear that it was considering the profits of the allegedly infringing defendant (as opposed to the profits lost by the plaintiff as a result of the defendant's alleged infringement). *Id.* at 214 (explaining that the plaintiff "sought (among other things) an order requiring [the defendant] to hand over the profits it had earned thanks to its trademark violation"). Nonetheless, like with regard to quality and reputation evidence, Aviator Nation fails to adequately explain why consideration of its mental state makes relevant adidas's lost sales or profits in this case. Again, to the extent that Aviator Nation argues that its mental state is relevant because it indicates that Aviator Nation did not intend to trade on adidas's goodwill (and therefore did not intend to cost adidas sales or profits), *see Stone Creek, Inc.*, 808 F. App'x at 460 n.2, the Court again concludes that this argument is too attenuated to impose on adidas the burden of producing sensitive sales and profits information, i.e., that Aviator Nation's requests are not proportional to the needs of this case.

required to present any evidence of particular financial harm that it suffered so as to justify legal redress."); *Polo Fashions, Inc. v. Magic Trimmings*, 603 F. Supp. 13, 19 (S.D. Fla. 1984) ("In determining the entitlement to [the] Defendants' profits as an element of monetary relief, the Plaintiff need not demonstrate any actual damages in order to obtain an accounting for profits.").

For all these reasons, Aviator Nation's motion to compel is denied as to documents concerning adidas's profits and evidence of lost sales (i.e., RFP Nos. 74, 75, 76, and 77, and Interrogatory Nos. 14 and 16).

3.      *Documents & Exhibits from Previous Suits Against Non-Parties*

At issue in this portion of Aviator Nation's motion to compel are RFP Nos. 68 and 110, which together seek

> (1) documents adidas [] marked as an exhibit either in a deposition, a court filing, or at trial in its trademark lawsuits against Thom Browne, Inc. or Fashion Nova, Inc. involving the Three-Stripe Mark; and (2) transcripts for any deposition taken of adidas's witnesses in its lawsuits against Thom Browne, Inc. and Fashion Nova, Inc., including exhibits.

Defs. Mot. to Compel 10-11; *see* Workicho Decl. Ex. 5 at 235; *see also* Workicho Decl. Ex. 6 at 263. adidas objected to RFP No. 68 on a variety of grounds, including, in relevant part, relevance and confidentiality, and noted that although it "has produced or will be producing numerous documents that were exhibits in the Plaintiffs' [former] lawsuits . . . because those particular documents are relevant to the present matter or are otherwise responsive to Defendants' discovery requests," adidas would "not categorically produce all documents that were marked as exhibits in prior cases solely on the basis that they were previously marked as exhibits in a prior unrelated litigation." Workicho Decl. Ex. 5 at 235-36. adidas objected to RFP No. 110 on similar grounds. *See id.* at Ex. 6 at 262-63.

adidas contends that after the motion to compel was filed, adidas offered to provide transcripts and exhibits related to those witnesses who are common to both this suit and the suits against Thom Browne, Inc. and Fashion Nova, Inc. Pls. Resp. to Defs. Mot. to Compel 9. Aviator Nation declined this offer, reasoning that "[r]eceiving only the transcripts for the current adidas witnesses is not enough because Defendants need the documents reflecting the testimony of adidas's former employees . . . , particularly

since some of those former employees testified in a 30(b)(6) capacity." *Id.* (emphasis omitted) (citing Nelson Decl. Ex. 5 at 3). Aviator Nation then stated that "if adidas agree[d] to provide the deposition transcripts and exhibits for all of its fact and expert witnesses in *Fashion Nova* and *Thom Browne*, Defendants [would] agree that adidas does not have to provide documents marked as an exhibit in a court filing or at trial in those cases." *Id.* at 8-9 (citing Nelson Decl. Ex. 5 at 3). In response, "adidas offered to provide all deposition transcripts and exhibits from (a) its 30(b)(6) witnesses and (b) experts in the *Fashion Nova* and *Thom Browne* cases." *Id.* at 9; *see* Nelson Decl. Ex. 5 at 2. Despite "provid[ing] Defendants with exactly what they were asking for," adidas asserts, Aviator Nation declined adidas's offer, "insisting [it] need[s] 'all transcripts' and exhibits from any witness, without any explanation." Pls. Resp. to Defs. Mot. to Compel 9 (emphasis omitted); *see* Nelson Decl. Ex. 5 at 1. adidas ultimately asks the Court to "find adidas's proposed compromise sufficient and order no further production or relief." Pls. Resp. to Defs. Mot. to Compel 11.

Aviator Nation acknowledges that adidas "objected on relevance and burden grounds" but addresses only the issue of relevance. Defs. Mot. to Compel 10. On that issue, Aviator Nation asserts that RFP Nos. 68 and 110 are relevant because adidas's suits against Thom Browne, Inc. and Fashion Nova, Inc. both revolve around "identical" issues: "the use of stripes on apparel." *Id.* Thus, Aviator Nation asserts, "[d]eposition and trial exhibits in those cases are unquestionably relevant to this case, in which adidas alleges the same claims involving the same trademark." *Id.* Aviator Nation's argument fails. First, as previously noted, the claims in this suit are not identical to, at the least, the claims asserted in adidas's prior litigation against Fashion Nova, Inc. *See supra*, page 11. Second, that all three suits generally concern the use of stripes on apparel is, again, too broad and cursory an argument to support compelling production of *all* transcripts and *all* exhibits from *any* witness in cases filed against different defendants and which were litigated years ago. *See* Workicho Decl. Ex. 5 at 235 (indicating that these suits occurred between approximately five and twenty years ago); Tr. of Proceedings of June 11, 2025, ECF 54, at 10:9-12 (indicating the trial against Thom Browne, Inc. occurred two years prior). Third and finally, the burden of producing the breadth of material requested, much of which adidas avers includes confidential information

16

of non-parties, outweighs whatever attenuated relevance the Court might find present here.

For all these reasons, Aviator Nation's motion to compel is denied as to requests concerning transcripts and exhibits from previous suits against non-parties (i.e., RFP Nos. 68 and 110). If they have not already been produced, adidas shall produce the transcripts and exhibits from previous suits against non-parties that it has already offered to produce.

4.      *Text Message Data*

The Court finally turns to Aviator Nation's request for an order compelling adidas to collect and produce certain text message data. *See* Order of July 30, 2025, at Ex. 5 at 5-6.



The Court need not spill much ink on this issue. At first glance, Aviator Nation may appear to ask only for that which was asked of it: a tailored search for text messages from certain custodians using search terms on those custodians' texts, and production of the relevant text messages. *Compare* Order of April 8, 2025 (ordering Aviator Nation to (1) "collect complete text message and chat data"; (2) "run the search terms on this data that defendants agreed to run"; and (3) "produce all responsive, relevant texts and chats"), *with* Order of July 30, 2025, at Ex. 5 (asking the Court to compel adidas to "(1) collect complete text message data . . . ; (2) run search terms on this text message data; and (3) produce all responsive, relevant texts"). For several reasons, the circumstances are inapposite.

To begin, at its core this case is about adidas's allegations that certain of Aviator Nation's prior and current apparel designs infringe on adidas's Three-Stripe Mark. adidas has represented that it asked its custodians—including Murphy—whether they, in light of the discovery requests served by Aviator Nation in this case, had documents or text messages or used text to communicate about anything relevant to this case, and each custodian answered in the negative. *Id.* at 2-4; Tr. of Proceedings of June 11, 2024, at 36:7-10. Murphy's texts were searched twice: first by Murphy himself, and then by "a separate forensic search

where [adidas's counsel] collected all of his text message data and then ran searches on it[.]"  Tr. of Proceedings of June 11, 2024, at 36:10-15.  With regard to the search terms used, those search terms mirrored those described in the prior discovery dispute arising in this case and, more fundamentally, the terms agreed on by the parties for Aviator Nation's search of its electronically-stored information.  *Id.* at 36:21-37:2.  In contrast, Aviator Nation does not identify any discovery request to which adidas has improperly withheld documents and, likewise, does not identify any search terms previously agreed on by the parties that adidas has not run or has run but not produced responsive documents for.  Aviator Nation's request is appropriately denied.

* * *

For all of these reasons, Aviator Nation's motion to compel is denied in full.

**B.     Aviator Nation's Motion for Discovery Sanctions**

The next dispute before the Court is Aviator Nation's motion for discovery sanctions, which ultimately concerns two exhibits.  Defs. Mot. for Disc. Sanctions ("Defs. Sanctions Mot."), ECF 55.  In this motion, Aviator Nation asserts that adidas disclosed certain accused products—the two exhibits at issue— in interrogatory responses after the close of fact discovery.  *See id.* at 2.  As a sanction, Aviator Nation urges the Court to (1) exclude the allegedly belatedly disclosed accused products or, in the alternative, (2) reopen fact discovery to allow Aviator Nation to depose one of adidas's witness about the allegedly belatedly disclosed accused products.  *Id.*  adidas timely responded.  Pls. Resp. to Defs. Sanctions Mot., ECF 61.

The Court again need not spill much ink on this issue.  The evidence before the Court shows that, in response to an interrogatory issued by Aviator Nation, adidas created a chart delineating which of Aviator Nation's apparel designs are disputed in this case.  Nelson Decl. ¶¶ 2-3 & Exs. 1, 2.  adidas amended the chart several times throughout discovery as adidas became aware of additional product colorways that it alleged were infringing.  *Id.* ¶¶ 3-4, 8, 12 & Exs. 3, 9.  Then, following the close of fact discovery, adidas amended the chart again by (1) removing certain designs and dropping adidas's claims as to those designs; (2) narrowing adidas's claims as to each remaining disputed design; and (3) supplementing the chart with

18

two additional colorways of certain designs that adidas had previously disclosed (at the latest, during depositions) and accused of infringement. *See* Nelson Decl. ¶ 11 & Ex. 8 (showing amended chart); *see id.* ¶ 6 & Ex. 5 (discussing during deposition of Mycoskie the two exhibits now disputed); *see id.* ¶ 10 & Ex. 7 at 89:24-90:4, 109:25-110:17 (discussing during deposition of adidas's Associate General Counsel the two exhibits now disputed). The Court declines to penalize adidas for complying with its disclosure obligations and narrowing the issues in this case. Aviator Nation's motion for discovery sanctions is denied.

**C.    adidas's First Motion to Strike**

The next dispute before the Court is the first of two pending motions to strike filed by adidas. In this motion, adidas seeks to strike as untimely certain expert testimony regarding costs and deductions. Pls. Mot. to Strike Evid. Re: Costs & Deductions ("Pls. 1st Mot."), ECF 63. Specifically, adidas argues that although Aviator Nation bears the burden of proof on the issue of costs and deductions, the Holmes Report, which opines as to costs and deductions, was not filed until August 15, 2025, the deadline to file initial expert reports regarding issues on which a party does *not* bear the burden of proof. *Id.* at 3-4. Aviator Nation timely responded. Defs. Resp. to Pls. 1st Mot., ECF 67.

The issue of the Holmes Report centers around a stipulated[9] amended case schedule that the parties emailed to the Court at the Court's direction following a telephone status conference. Specifically, the parties emailed the Court on March 3, 2025 with certain agreed upon deadlines, including a July 15, 2025 deadline for initial expert reports from the party bearing the burden of proof on an issue, and an August 15, 2025 deadline for initial expert reports from the party not bearing the burden of proof on an issue. Henn Decl. Ex. A. On the latter date, Aviator Nation filed the Holmes Report, which opines, in relevant part, as to the issue of costs and deductions. Henn Decl. ¶ 6 & Ex. C. However, there can be no doubt that Aviator Nation bears the burden of proof on the issue of costs and deductions. *See* 15 U.S.C. § 1117(a) (an infringing defendant "must prove all elements of cost or deduction claimed" in calculating the defendant's

---

[9] Aviator Nation has not disputed that it stipulated to the amended case schedule and itself states that "the parties have been operating under a stipulated amended case schedule the parties jointly submitted to the Court." Defs. Resp. to Pls. 1st Mot. 2.

profits); *see also Fifty-Six Hope Rd. Music*, 778 F.3d at 1076 (indicating the burden is on "the defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's lost profits").[10]  As such, the expert testimony regarding costs and deductions introduced in the Holmes Report was not timely according to the parties' stipulated amended case schedule.

However, the question here is not whether the Holmes Report was timely under the pertinent deadline, but rather, whether there was a valid deadline at all.  The parties' stipulated amended case schedule was not filed on the docket and was not otherwise expressly adopted by this Court.  The Court therefore does not believe that it is within its authority to exclude any portion of the Holmes Report under Rule 16, which explicitly references the failure to obey a court order.  Fed. R. Civ. P. 16(f)(1)(C) (allowing sanctions where a party or a party's attorney "fails to obey a scheduling or other pretrial order"); *see Wong*, 410 F.3d at 1060 (stating that "failure to comply strictly with scheduling and other orders . . . may properly support severe sanctions and exclusions of evidence"); *see also Martinez v. Costco Wholesale Corp.*, 336 F.R.D. 183, 187 (S.D. Cal. 2020) ("[A] party that fails to comply with a scheduling order is subject to the sanctions available to a court to enforce its orders.").

To be clear, the Court does not take lightly that, by all appearances, Aviator Nation has attempted to strategically maneuver around its own stipulations, disclosures, and other obligations in this case. However, where the Court cannot technically say that the proffering of the Holmes Report offended a filed stipulation or Court order, the sanction of exclusion does not appear to be appropriate under Rule 16.  For this reason, adidas's first motion to strike is denied.  adidas shall have thirty (30) days from the date of this Opinion and Order to provide a rebuttal report on the issues raised by the Holmes Report.  Other than the extension of adidas's rebuttal report deadline as applied to the Holmes Report and, as discussed below, the

---

[10] Aviator Nation's arguments on this point are unavailing.  Aviator Nation asserts that because Aviator Nation does not have to prove costs and deductions unless and until adidas satisfies its initial burden of proving infringing sales, and because there is not yet any finding of fact to that effect, there is presently no burden on Aviator Nation to prove anything.  Defs. Resp. to Pls. 1st Mot. 2.  But the question is not who bears the *first* burden in the case *overall*.  The question is who bears the burden *on a given issue*.  Here, that discrete issue is costs and deductions, and the law cited herein is unequivocal that the burden to prove costs and deductions lies on Aviator Nation's shoulders.

Morton Report, the Court hereby adopts the parties' stipulated amended case schedule. From this point forward, any violation of these deadlines will be deemed a violation of a court order.

**D.      adidas's Second Motion to Strike**

The final discovery dispute before the Court is adidas's second motion to strike. Pls. Mot. to Strike Evid. Re: Pantones ("Pls. 2d Mot."), ECF 65. In this motion, plaintiffs seek to strike the Morton Report based on its discussion of Pantone colors, arguing that Aviator Nation improperly withheld information and documents regarding Pantones that cannot now be relied upon. Specifically at issue in this motion are adidas's RFP Nos. 20 and 21, in which adidas seeks "documents sufficient to identify the Pantone color of each stripe and the color of the underlying apparel" of both the designs at issue in the 2019 Lawsuit (RFP No. 20) and this case (RFP No. 21). Hooker Decl. Ex. B at 7. Aviator Nation objected to these requests and responded that it had produced all "documents, within its possession, custody or control, sufficient to identify the Pantone colors of the stripes and colors of the underlying apparel included in the" designs at issue in this case. Hooker Decl. Ex. C at 31-32.

adidas asserts that Aviator Nation never provided documents responsive to these requests and that Aviator Nation's responses to other discovery requests and certain deposition testimony each indicate that responsive documents do exist. Pls. 2d Mot. 5-8. On October 24, 2024, and then again on February 3, 2025, adidas requested the purportedly missing documents from Aviator Nation via letter. Hooker Decl. ¶¶ 6, 8 & Exs. D, F. According to adidas, "at no point before the end of fact discovery did Defendants produce Pantone assignment sheets, Pantone cards, or any other documents reflecting the assignment or comparison of Pantone numbers to stripes or backgrounds." Pls. 2d Mot. 5. Nonetheless, after the close of fact discovery, Aviator Nation provided an exhibit showing an individual holding Pantone sheets up to apparel, and an apparel design with Pantone colors used. *See* Hooker Decl. ¶ 16 & Ex. N. Aviator Nation also produced the Morton Report, wherein Morton's methodology included comparing the Pantone colors assigned to the stripes and backgrounds of the designs at issue in this suit. *See* Hooker Decl. Ex. O at 9, 14. Arguing that the Morton Report unjustifiably relies on belatedly disclosed documents concerning Pantones, adidas asks the Court to strike the Morton Report. Pls. 2d Mot. 2.

The evidence before the Court strongly suggests that Aviator Nation has untimely disclosed or otherwise withheld certain relevant documents. But the evidence before the Court does not show that the Morton Report relied on such documents. Morton avers that she was provided and reviewed (1) the 2022 Settlement Agreement; (2) the deposition transcript of adidas's Associate General Counsel; (3) two versions of the chart delineating designs disputed in this case, including the most recent amended, narrowed version; and (4) twenty-five physical apparel garments of certain designs disputed in this case. Hooker Decl. Ex. O at 1. In its response to adidas's motion, Aviator Nation avers the same. Defs. Resp. to Pls. 2d Mot., ECF 70, at 3, 5. Because the Court cannot conclude that the Morton Report relied on improper materials, the Court declines to strike it under Rule 37. *See* Fed. R. Civ. P. 37(c)(1) (forbidding "the *use*" of improperly disclosed evidence (emphasis added)); *and see Yeti by Molly, Ltd.*, 259 F.3d at 1106 (same). adidas shall have thirty (30) days from the date of this Opinion and Order to provide a rebuttal report on the issues raised by the Morton Report.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## CONCLUSION

For the reasons stated herein, Aviator Nation's motion to compel, including its filed motion to compel, ECF 45 (and accompanying public version located at ECF 52), and its emailed request for an order compelling additional discovery, *see* Order of July 30, 2025, at Ex. 5, ECF 58-5, are DENIED; Aviator Nation's motion for discovery sanctions, ECF 55, is DENIED; adidas's first motion to strike, ECF 63, is DENIED; and adidas's second motion to strike, ECF 65, is also DENIED.  adidas shall have thirty (30) days from the date of this Opinion and Order to provide a rebuttal report on the issues raised by the Holmes and Morton Reports.  This Opinion and Order shall remain sealed for fourteen (14) days, during which time the parties may submit to the Court any proposed redactions they may deem necessary.  If no proposed redactions are received within fourteen (14) days, this Opinion and Order will be made public in its entirety.

IT IS SO ORDERED.

DATED this 30th day of March, 2026.

Adrienne Nelson
United States District Judge